[No. A069951. First Dist., Div. One. July 22, 1996.]

DEPARTMENT OF TRANSPORTATION, Petitioner, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
MARK TATE et al., Real Parties in Interest.

COUNSEL

William M. McMillan, Brelend C. Gowan, Ralph E. Livingstone, Jr., George L. Cory and Scott M. Burns for Petitioner.

No appearance for Respondent.

Thomas R. Kenney for Real Parties in Interest.

OPINION

DOSSEE, J.—

## I. INTRODUCTION

The Department of Transportation (Caltrans) is a defendant in a personal injury action brought by plaintiffs/real parties in interest Mark and Patricia Tate (the Tates). The action arises out of an automobile accident on Highway 37 in Solano County. According to the Tates' complaint, the accident occurred when a vehicle driven by a third party crossed over the center line and struck Mark Tate's vehicle. The complaint alleges that dangerous conditions on the highway contributed to the accident.

By this petition, Caltrans challenges a superior court discovery order requiring it to produce several categories of information to the Tates. Caltrans concedes that the information is generally subject to discovery under California law but contends that 23 United States Code section 409 preempts California law and protects the information from disclosure.[1] Although we agree that section 409 preempts state law under certain narrowly defined circumstances, we hold that Caltrans has failed to carry its burden of demonstrating that the information at issue falls within the scope of the federal privilege. Therefore, we deny the petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In March 1994, the Tates served requests for production of documents on Caltrans. Caltrans objected to several of the requests on the ground that they called for the production of information protected by section 409, which provides as follows: "Notwithstanding any other provision of law, reports,

---

[1]All further statutory references are to title 23 of the United States Code unless otherwise indicated.

surveys, schedules, lists, or data compiled *or collected* for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data." (Italics added.)[2]

In November 1994, the Tates filed a motion to compel production of the information. The superior court granted the motion, ruling that it would not give section 409 preemptive effect unless ordered to do so by a higher court.[3] On May 15, 1995, Caltrans petitioned this court for a writ of mandate. We summarily denied the petition. Caltrans then sought review in the Supreme Court. On November 30, 1995, the Supreme Court granted review and directed this court to hear the matter on calendar. Having done so, we now deny the petition.

## III. Discussion

■ Caltrans contends that the superior court erred when it held that section 409 does not preempt state law under any circumstances. We agree. Section 409 provides that "[n]otwithstanding any other provision of law" enumerated categories of information "shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes." (See *ante*, pp. 854-855.) To the extent that section 409 applies to state court proceedings, its language is clearly and expressly preemptive. (*Wiedeman* v. *Dixie Elec. Membership Corp.* (La. 1993) 627 So.2d 170, 172; *Martinolich* v. *Southern Pacific Transp.* (La.Ct.App. 1988) 532 So.2d 435, 437.)

---

[2]After the superior court issued its ruling, section 409 was amended to add the words "or collected." (See Pub.L. No. 104-59 (Nov. 28, 1995) tit. III, § 323, 109 Stat. 591, 1995 U.S. Code Cong. & Admin. News, No. 1.) Caltrans argues that this amendment was intended to reject overly narrow interpretations of section 409 by a few state courts. We need not dwell on the amendment because, whatever its effect, it did not eliminate the express requirement that the information at issue have been compiled or collected *pursuant to section 152*, a requirement that Caltrans has failed to establish in this case. (See *post*, pp. 856-858.)

[3]At the hearing on the Tates' motion to compel, the superior court explained that "I'm going to follow the law of discovery as I feel applies through our own codes and case law. In other words, the State should be able and has in the past regulated discovery of its own lawsuits. I don't believe the Federal government should come in and tell the State what to do in that particular area of the law."

However, our determination that section 409 contains an express preemption clause is only the beginning of our inquiry. Our remaining task is to determine the domain expressly preempted. (*Louisiana-Pacific Corp.* v. *Koppers Co.* (1995) 32 Cal.App.4th 599, 603 [38 Cal.Rptr.2d 257].) Since section 409 contains an express preemption clause, ". . . the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." (*CSX Transportation, Inc.* v. *Easterwood* (1993) 507 U.S. 658, 664 [123 L.Ed.2d 387, 396, 113 S.Ct. 1732].)

As it pertains to this case, section 409 covers (1) reports, surveys, schedules, lists, or data; (2) compiled or collected; (3) for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites or hazardous roadway conditions;[4] (4) pursuant to section 152;[5] and (5) at a location mentioned or addressed in such reports, surveys, schedules, lists, or data. (See *ante,* pp. 854-855.) Caltrans has the burden of establishing each of these requirements before the discovery and admissibility provisions of section 409 become operative. (*Southern Pacific Transp. Co.* v. *Yarnell* (1995) 181 Ariz. 316 [890 P.2d 611, 613]; see also *Kizer* v. *Sulnick* (1988) 202 Cal.App.3d 431, 439 [248 Cal.Rptr. 712].)

In its petition and its traverse, Caltrans argues that the superior court erroneously compelled it to produce five categories of information—specifically, traffic collision reports, data from an automated database, traffic investigation reports, project and safety reports, and traffic volume summaries. In advancing this argument, Caltrans fails to correlate any of the information to section 152.[6] Ignoring the plain language of the statute, Caltrans asserts that "[t]he reports protected by Section 409 are unrelated to

[4]Caltrans concedes that the "federal funding" prong of section 409 is not applicable to the facts of this case. (See *ante,* pp. 854-855.)

[5]This case does not involve a railway-highway crossing or a highway bridge replacement and rehabilitation program, and, hence, sections 130 and 144 are inapplicable. (See *ante,* pp. 854-855.)

[6]Section 152 is entitled "[h]azard elimination program." Subdivision (a) of section 152 provides that "[e]ach State shall conduct and systematically maintain an engineering *survey* of all public roads to identify hazardous locations, sections, and elements, including roadside obstacles and unmarked or poorly marked roads, which may constitute a danger to motorists and pedestrians, assign priorities for the correction of such locations, sections, and elements, and establish and implement a *schedule* of projects for their improvement." (Italics added.) Subdivision (f) of section 152 provides that "[e]ach State shall establish an evaluation process approved by the Secretary [of Transportation], to analyze and assess results achieved by highway safety improvement projects carried out in accordance with procedures and criteria established by this section. Such evaluation process shall develop cost-benefit *data* for various types of corrections and treatments which shall be used in setting priorities for highway safety improvement projects." (Italics added.) Subdivision (g) of section 152

those enumerated in [section] 152." (Italics omitted.) Instead, Caltrans attempts to broaden the scope of the statute, arguing that "[t]he specific criteria by which to determine the types of documents and data that are within section 409's scope are found in the implementing regulations adopted by the United States Department of Transportation for the Highway Safety Improvement Program. These regulations are contained in 23 Code of Federal Regulations section 924.1 et seq."

We decline to give section 409 the broad construction advanced by Caltrans. ▮ "Where, as here, the intrusion is into an area traditionally occupied by the states, Congress' intent to preempt must be clear. [Citation] When the possibility of intrusion into a field traditionally left to the states is perceived, there exists a presumption that the states' laws remain valid." (*Martinolich* v. *Southern Pacific Transp.*, *supra*, 532 So.2d at pp. 437-438, citing *Jones* v. *Rath Packing Co.* (1977) 430 U.S. 519, 525 [51 L.Ed.2d 604, 613-614, 97 S.Ct. 1305]; see also *CSX Transportation, Inc.* v. *Easterwood*, *supra*, 507 U.S. at pp. 663-664 [123 L.Ed.2d at pp. 396-397]; *Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 93-94 [160 Cal.Rptr. 733, 603 P.2d 1329].) ▮ "Since preemption is never presumed, [section] 409 must be construed restrictively to prohibit only what is expressly proscribed. [Citation.]" (*Wiedeman* v. *Dixie Elec. Membership Corp.*, *supra*, 627 So.2d at p. 172; see also *Martinolich* v. *Southern Pacific Transp.*, *supra*, 532 So.2d at p. 438.) Furthermore, privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." (*United States* v. *Nixon* (1974) 418 U.S. 683, 710 [41 L.Ed.2d 1039, 1065, 94 S.Ct. 3090], fn. omitted; see also *Kitts* v. *Norfolk and Western Ry. Co.* (S.D.W.Va. 1993) 152 F.R.D. 78, 80; *Wiedeman* v. *Dixie Elec. Membership Corp.*, *supra*, 627 So.2d at p. 173; *Martinolich* v. *Southern Pacific Transp.*, *supra*, 532 So.2d at p. 439.)

By its own terms, section 409 incorporates section 152, not 23 Code of Federal Regulations section 924.1 et seq. (1995). Nor is there any reason to believe that the regulations were designed as "specific criteria by which to determine the types of documents and data that are within section 409's scope." To the contrary, the regulations were promulgated several years

---

provides that "[e]ach State shall *report* to the Secretary of Transportation not later than December 30 of each year, on the progress being made to implement highway safety improvement projects for hazard elimination and the effectiveness of such improvements. Each State *report* shall contain an assessment of the cost of, and safety benefits derived from, the various means and methods used to mitigate or eliminate hazards and the previous and subsequent accident experience at these locations." (Italics added.) The use of the terms "reports," "surveys," "schedules," and "data" in section 152 parallels the use of the same terms in section 409. (See *Southern Pacific Transp. Co.* v. *Yarnell*, *supra*, 890 P.2d at p. 614.)

before section 409 was even enacted. Moreover, the scope of the regulations is considerably broader than section 152. While section 152 is narrowly focused on eliminating hazards such as roadside obstacles and unmarked or poorly marked roads (see *ante*, fn. 6), the purpose of the regulations "is to set forth policy for the development and implementation of a *comprehensive* highway safety improvement program in each State." (23 C.F.R. § 924.1, italics added.) Under section 402, one of the statutes identified as authority for the regulations, the elements of a comprehensive highway safety improvement program extend well beyond the elimination of roadway hazards.[7] Accordingly, the information that a state is required to collect and report under section 402 is much broader than that required under section 152, extending to all "data on traffic-related deaths and injuries . . . as the Secretary [of Transportation] may require."[8] (§ 402(a).)

Caltrans's reliance on a January 25, 1993, memorandum from the Federal Highway Administration of the United States Department of Transportation is similarly misplaced. The memorandum, which is signed by an associate administrator for safety and system applications, summarily states that data collected and compiled pursuant to 23 Code of Federal Regulations section 924.1 et seq. (1995) is equivalent to the "reports, surveys, schedules, lists, or data" referenced in section 409. It is well established that an administrative agency and its employees may not enlarge the scope of a legislative enactment. (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].) As noted above, it was Caltrans's burden to establish each of the requirements of section 409, including that the information at issue was compiled or collected *pursuant to section 152.* Having relied exclusively on the provisions of the Code of Federal Regulations, Caltrans has failed to do so. Accordingly, the trial court did not err when it granted the Tates' motion to compel.

---

[7] Section 402 bears the general title "[h]ighway safety programs" and provides that "[e]ach State shall have a highway safety program approved by the Secretary [of Transportation], designed to reduce traffic accidents and deaths, injuries, and property damage resulting therefrom." (§ 402(a).) The goals of a section 402 highway safety program include hazard elimination. (See, e.g., § 402(a) ["highway design and maintenance (including lighting, markings, and surface treatment)"].) However, there are numerous other mandated elements of a section 402 program as well. (See, e.g., § 402(a) ["programs (1) to reduce injuries and deaths resulting from motor vehicles being driven in excess of posted speed limits, (2) to encourage the proper use of occupant protection devices (including the use of safety belts and child restraint systems) by occupants of motor vehicles and to increase public awareness of the benefit of motor vehicles equipped with airbags, (3) to reduce deaths and injuries resulting from persons driving motor vehicles while impaired by alcohol or a controlled substance, (4) to reduce deaths and injuries resulting from accidents involving motor vehicles and motorcycles, (5) to reduce injuries and deaths resulting from accidents involving school buses, and (6) to improve law enforcement services in motor vehicle accident prevention, traffic supervision, and post-accident procedures"].)

[8] Some of the information required by section 402 is protected by its own privilege (see § 402(k)(1)), a privilege that Caltrans did not assert in this case.

## IV. DISPOSITION

The alternative writ is discharged, and the petition for a writ of mandate is denied. The stay previously imposed will remain in effect until this opinion becomes final as to this court. The Tates shall recover their costs on this petition.

Strankman, P. J., and Stein, J., concurred.

A petition for a rehearing was denied August 12, 1996.