[Nos. 22614-6-II; 24021-1-II. Division Two. August 6, 1999.]

IGNACIO GUILLEN, *as Guardian*, ET AL., *Respondents*, v.
PIERCE COUNTY, *Petitioner.*

*John W. Ladenburg, Prosecuting Attorney*, and *Daniel Ray Hamilton* and *Susan Paula Jensen, Deputies*, for petitioner.

*David Knox Dewolf* of *Casey Gore & Grewe*; and *Salvador Alejo Mungia II, Juliana Theresa Kendall*, and *Darrell L. Cochran* of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*, for respondents.

MORGAN, J. — The question for decision is whether the entire accident history of a Pierce County intersection is exempt from discovery by virtue of 23 U.S.C. § 409. The answer is no.

In May 1995, Pierce County applied for federal highway funds to improve the intersection of 168th Street East and B Street East. It supported its application with various documents, including:

1. Motor vehicle traffic accidents by location - County of Pierce - prepared by Records Section, Washington State Patrol [WSP], [1/90]–6/30/96.

10. Collision diagram dated 1/5/89 prepared by Georgia Fischer.

11. Collision diagram dated 7/18/88 prepared by Georgia Fischer.

13. Police Traffic Collision Reports and Motor Vehicle Reports from 1/1/90 prepared by [various] law enforcement agencies.

15. Draft letter to Barbara Gelman from Frederick L. Anderson with note to file signed by Jim Ellison on 3/6/89.[1]

According to the County's Public Works Engineer, item 13 "is a collection of the accident reports for the subject intersection from 1990 through 1996." Item 1 "is a list of those same accidents showing the location, time, date, and nature of the accident." "Items 10 and 11 are collision diagrams prepared by a County employee who is responsible

---

[1]Clerk's Papers at 20-21.

for investigating accidents at the intersection."[2] Item 15 "is the draft of a memorandum from Fred Anderson, then Public Works Director, to Barbara Gelman, then County Council member. It consists of information used for the County's application for federal funds for safety enhancement at the intersection."[3] The record does not contain the documents themselves.[4]

On July 5, 1996, Ignacio Guillen's wife was killed as she drove through the intersection of 168th Street East and B Street East. Her passengers were injured. On July 26, 1996, Pierce County's application for federal funds was granted.

By letters dated August 16 and October 28, 1996, Guillen asked Pierce County to disclose certain accident reports. The reports he wanted described accidents that had occurred at the intersection between 1990 and 1996. His second letter stated in part:

> I want to make the record clear that we are not seeking any reports that were specifically written for developing any safety construction improvement project at the intersection at issue. However, on behalf of our clients, we are seeking a copy of all documents that record the accident history of the intersection that may have been used in the preparation of any such reports. In other words, we are simply seeking information as to when accidents have occurred at the intersection for the last ten years. This would include any documents that record (1) the date of any such accidents, (2) the parties involved at each such accident, (3) the date of each such accident, (4) fatalities, if any, at each such accident, (5) the identification of all known [witnesses] at each such accident, (6) copies of photographs taken at each such accident, (7) the configuration of the intersection (what traffic signs existed) at the time of

[2]Clerk's Papers at 54-55.

[3]Clerk's Papers at 39.

[4]The County asked the trial court to examine the documents in camera, but the trial court refused. The County did not ask the trial court to seal and file the documents for appellate review. The County does not assign error to the trial court's refusal to examine the documents in camera.

each such [accident], and (8) documents recording traffic counts at the intersection.[5]

The County refused to disclose the requested information.

On December 5, 1996, Guillen sought judicial review pursuant to the public disclosure act, RCW 42.17.[6] In June 1997, the County made a motion for summary judgment, based on 23 U.S.C. § 409 and the declarations of various officials. The declarations stated that the County's Public Works Department had collected and compiled documents 1, 10, 11, 13 and 15 for use in its 1995-96 application for federal funding. In July 1997, Guillen made a cross-motion for summary judgment.

In September and October 1997, the trial court heard the parties' motions. It was undisputed that a number of accidents had occurred at the intersection, and that law enforcement officers had generated written accident reports. Guillen pleaded orally to the trial court:

Just give us the accident reports . . . . We just need to know

---

[5]Clerk's Papers at 93.

[6]RCW 42.17.340(1) provides:

Upon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records. The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records.

RCW 42.17.340 (3) provides:

Judicial review of all agency actions taken or challenged under RCW 42.17.250 through 42.17.320 shall be de novo. Courts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others. Courts may examine any record in camera in any proceeding brought under this section. The court may conduct a hearing based solely on affidavits.

what accidents occurred here. The accident reports are a police function; they make those when an accident occurs.[7]

The County responded:

. . . [W]e claimed privilege for a stack of accident reports that occurred . . . between 1990 and 1996 . . . .

. . . .

. . . [The reports] were used to create the accident history which was exactly what was required in our 1996 application for [federal] funds.[8]

The trial court granted Guillen's motion and denied the County's. In November 1997, it signed a written order requiring the County to disclose the requested information and pay reasonable attorneys fees pursuant to RCW 42.17.340(4).[9] The County then filed this appeal.

On April 10, 1998, during the pendency of the County's appeal from the public disclosure action, Guillen filed a separate negligence action in which he alleged that the County had failed to erect proper traffic controls at the intersection.[10] He also propounded interrogatories seeking the intersection's accident history and related information. The County refused to answer the interrogatories, again citing 23 U.S.C. § 409.

On September 28, 1998, Guillen moved for an order compelling the County to answer his interrogatories. The trial

[7]Report of Proceedings at 6.

[8]Report of Proceedings at 4.

[9]RCW 42.17.340(4) provides:

Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record.

[10]There were other plaintiffs also, but they are not material to the issues here.

court granted the motion and directed the County to disclose:

1. The identity of all employees, agents, or officials of Defendant Pierce County who have knowledge of automobile accidents taking place at the intersection at issue for the time period January 1, 1990 through July 4, 1996;

2. The identity of all persons within Pierce County's knowledge who have been involved in automobile accidents at the intersection at issue for the time period of January 1, 1990 through July 5, 1996;

3. The identity of all Pierce County deputy sheriffs who patrolled the intersection at issue during the time frame of January 1, 1990 through July 4, 1996;

4. The date, identity of all persons involved, and the identity of all fatalities for each automobile accident occurring at the intersection at issue for the time period of January 1, 1990 through July 5, 1996;

5. A copy of all photographs, Pierce County has in its possession, control or custody of accidents involving at least one automobile at the intersection at issue from January 1, 1990 through July 6, 1996;

6. A copy of all written statements by witnesses to accidents at the intersection at issue that occurred during the time period of January 1, 1990 through July 6, 1996; and

7. A copy of all accident reports sent to Pierce County from individuals who had been involved in automobile accidents at the intersection at issue from January 1, 1990 through July 4, 1996.[11]

On December 7, 1998, Pierce County moved for discretionary review of the trial court's order compelling it to answer Guillen's interrogatories. A commissioner of this court granted the motion and consolidated the negligence case with the public disclosure case that was already pending. We now review both cases.

---

[11]Petitioner's Mot. for Discretionary Review, Exhibit A-20 (Amended Order Granting Pl's Mot. to Compel Disc. (Nov. 20, 1998)).

The issue on appeal is whether the information Guillen seeks is privileged from discovery by virtue of 23 U.S.C. § 409. To resolve that issue, we focus on 23 U.S.C. § 152 and 23 U.S.C. § 409. Hereafter, we refer to those provisions as Section 152 and Section 409.

 Section 152 describes a funding program under which the federal government will pay much of the cost of improving hazardous public roads. Section 152 provides in part:

(a) . . .

. . . Each State shall conduct and systematically maintain an engineering survey of all public roads to identify hazardous locations, sections, and elements . . . , which may constitute a danger to motorists, bicyclists, and pedestrians, assign priorities for the correction of such locations, sections, and elements, and establish and implement a schedule of projects for their improvement.

(b) The Secretary [of Transportation] may approve as a project under this section any safety improvement project. . . .

(c) . . . .

(d) The Federal share payable on account of any project under this section shall be 90 percent of the cost thereof.[12]

One possible effect of Section 152 is to make it easier for injured persons to sue the state or its subdivisions. Section 152 requires a state to identify, and plan for the improvement of, "hazardous locations" on "all public roads." To comply with it, a state and its subdivisions must collect and compile information. If a person injured on a public road is given access to that information, it will be easier than otherwise for him or her to prove a claim that the road was hazardous.

Section 409 is designed to neutralize this effect of Section 152. It provides:

Notwithstanding any other provision of law, reports, surveys,

---

[12]23 U.S.C. § 152.

schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.[13]

According to courts in other jurisdictions, Section 409's purpose is "to prohibit federally required record-keeping from being used as a 'tool . . . in private litigation,' "[14] thereby facilitating "the free flow of safety-related information"[15] and "candor in administrative evaluations of highway safety hazards."[16]

An injured claimant can be aided by reports or data *collected* pursuant to Section 152 as much as by reports or data *compiled* pursuant to Section 152. For that reason, as Pierce County correctly points out, Congress intended Section 409 to protect both information *collected* pursuant to Section 152, and information *compiled* pursuant to Section 152. As initially enacted in 1987, Section 409 provided that "reports . . . or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites [or] . . . hazardous roadway conditions . . . pursuant to section[] . . . 152 . . . shall not be

---

[13]23 U.S.C. § 409.

[14]*Robertson v. Union Pac. R.R.*, 954 F.2d 1433, 1435 (8th Cir. 1992) (quoting *Light v. State*, 560 N.Y.S.2d 962, 965, 149 Misc. 2d 75 (1990). *See also Harrison v. Burlington N. R.R.*, 965 F.2d 155 (7th Cir. 1992)).

[15]*Reichert v. Louisiana Dep't of Transp. & Dev.*, 694 So. 2d 193, 197 (La. 1997); *Perkins v. Ohio Dep't of Transp.*, 65 Ohio. App. 3d 487, 584 N.E.2d 794, 802 (1989).

[16]*Harrison*, 965 F.2d at 160; *Robertson*, 954 F.2d at 1435; *Taylor v. St. Louis S.W. Ry.*, 746 F. Supp. 50, 54 (D. Kan. 1990); *Weideman v. Dixie Elec. Membership Corp.*, 627 So. 2d 170, 173 (La. 1993); *Duncan v. Union Pac. R.R.*, 790 P.2d 595, 597 (Utah Ct. App. 1990), *aff'd*, 842 P.2d 832 (Utah 1992).

admitted into evidence in [a] Federal or State court proceeding . . . ."[17] As amended in 1995, Section 409 provides that "reports . . . *compiled or collected* for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites [or] . . . hazardous roadway conditions . . . pursuant to section[] . . . 152 . . . shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding . . . ."[18] The purpose of the 1995 amendment was to clarify "that raw data compiled prior to being made part of any formal or bound report shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding . . . ."[19]

To apply Section 409 properly, a court must distinguish between (a) the agency (e.g., a law enforcement agency) that collects or compiles information for purposes *unrelated* to Section 152, and (b) the agency (e.g., a public works department or road department) that collects and compiles information *pursuant* to Section 152. Section 409 does not protect reports or data collected by the former, because the former was not acting pursuant to Section 152. Section 409 does protect reports or data collected by the latter, *provided* that the latter was acting "for the purpose of identifying, evaluating, or planning the safety enhancement of . . . hazardous roadway conditions . . . pursuant to" Section 152.

An example illustrates. Suppose that a sheriff and his deputies investigate accidents and write reports. Each report is written for law enforcement purposes (e.g., to record why the author did or did not make an arrest or issue a citation). Each report is filed in the sheriff's office. Some time later, in the course of conducting an "engineering survey" of all public roads "for the purpose of identifying, evaluating, or planning the safety enhancement of . . .

---

[17]23 U.S.C. § 409 (1990).

[18]23 U.S.C. § 409.

[19]Act of Nov. 18, 1995, Pub. L. No. 104-59, 1995 U.S.C.C.A.N. (109 Stat.) 591.

hazardous roadway conditions . . . pursuant to" section 152, the road department collects the sheriff's reports, analyzes the data they contain, and compiles the data in such a way as to demonstrate that certain public roads are hazardous. Still later, a plaintiff wants to inspect or copy (1) the reports as held by the sheriff, (2) the reports as collected by the road department, and (3) the data compiled by the road department. Section 409 bars the second and third claims if the road department collected the reports and compiled the data "pursuant to" Section 152. Section 409 does not affect the first claim, because the sheriff did not collect or compile the reports "pursuant to" Section 152.

Pierce County argues that once the road department "collects" reports "pursuant to" Section 152, the public may no longer have access to them *in any form*. In other words, the County says, it does not matter whether a plaintiff seeks accident reports as they exist in the hands of the sheriff or accident reports as collected by the road department; either way, the reports are nondiscoverable and nonadmissible under Section 409.

This argument contravenes the plain meaning of Section 409. As already seen, that section protects reports and data collected or compiled "for the purpose of identifying, evaluating, or planning the safety enhancement of . . . hazardous roadway conditions . . . pursuant to" Section 152. It does not protect reports collected for other purposes.

Additionally, the County's argument, if accepted, would extend Section 409 far beyond its purpose. As already seen, that purpose is to neutralize the litigation-aiding effect, if any, of Section 152 activity. It is *not* to exempt from discovery and admissibility reports or data *unrelated* to Section 152 activity.

Finally, the County's argument, if accepted, would give the County carte blanche to render immune from discovery every accident report related to a public road within its territory, simply by having its road department "collect" the report. This result is absurd, and we see no indication that Congress intended it.

 ██ Based on the foregoing analysis, we hold as follows:

(1) The trial court properly granted Guillen's request for disclosure of accident reports pertaining to the subject intersection. Guillen carefully requested reports in the hands of the sheriff or other law enforcement agencies, *not* reports or data "collected or compiled" by the Public Works Department "pursuant to" Section 152.

(2) The trial court properly granted Guillen's request for the diagrams prepared by Georgia Fischer. The County's declarations establish that Fischer was a "county employee" "responsible for investigating accidents";[20] that her diagrams were "compiled and used specifically for the purpose of determining the need for and designing the signalization improvement that was the basis of the Section 152 application";[21] and that her diagrams "were used to consider whether the design of the intersection was a causative factor in the accidents and what, if any, design improvements could be made to increase safety and lessen the possibility of future accidents."[22] Curiously, however, the County's declarations are consistent with Fischer's being a sheriff's deputy or other employee not generally engaged in Section 152 activity. They do not indicate the department Fischer worked in, her job title, or her job duties (except for investigating accidents). Nor do they indicate who used Fischer's diagrams for Section 152 purposes, or when Fischer's diagrams were used for Section 152 purposes. The County has the burden of showing that Fischer's diagrams were "collected or compiled" in the course of Section 152 activities,[23] and it has not met that burden here.

---

[20]Clerk's Papers at 54.

[21]*Id.*

[22]*Id.*

[23]RCW 42.17.340(1); *Southern Pac. Transp. Co. v. Yarnell*, 181 Ariz. 316, 890 P.2d 611, 613 (1995); *Department of Transp. v. Superior Court*, 47 Cal. App. 4th 852, 856, 55 Cal. Rptr. 2d 2 (1996). *See also Limstrom v. Ladenburg*, 136 Wn.2d 595, 612, 963 P.2d 869 (1998) (party asserting privilege must prove its applicabil-

(3) The trial court erred by granting Guillen's request for the draft memo from Anderson to Gelman. Section 409 protects information derived from Section 152 activities,[24] and it seems more probable than not that the disputed memo contains such information.

(4) The trial court properly granted Guillen's requests to disclose (a) the identity of all sheriff's deputies who patrolled the intersection; (b) accident photos; (c) witness statements; and (d) accident reports sent to the County from citizens involved in accidents at the intersection. None of these requests has anything whatever to do with Section 152 activities.

(5) The trial court properly granted Guillen's requests to disclose the identity of all County employees with knowledge of accidents at the intersection, for that request does not call for the disclosure of information derived pursuant to Section 152. If Guillen later asks questions that an employee can answer only by relying on information compiled or collected pursuant to Section 152, the County may object on a question-by-question basis, and the trial court will have to determine whether the employee can answer the question without relying on Section 152 activities.[25]

(6) Given that Guillen is entitled to all but one of his requests, the trial court did not err by awarding reasonable attorney's fees pursuant to RCW 42.17.340(4).

We affirm both orders appealed from, except that the County shall not be required to disclose the memo from Anderson to Gelman. Guillen shall receive his costs and

ity); *Dietz v. Doe*, 131 Wn.2d 835, 844, 935 P.2d 611 (1997) (same); *American Civil Liberties Union v. Blaine Sch. Dist. No. 503*, 95 Wn. App. 106, 975 P.2d 536 (1999) (same).

[24]*Lusby v. Union Pac. R.R.*, 4 F.3d 639, 641 (8th Cir. 1993); *Harrison*, 965 F.2d at 160 (court excludes oral testimony by author of highway safety report); *Robertson*, 954 F.2d at 1435 (same); *Yarnell*, 890 P.2d at 614.

[25]*See Lusby*, 4 F.3d at 641 (expert opinion based on independently generated data admissible); *Robertson*, 954 F.2d 1433. *See also Rodenbeck v. Norfolk & W. Ry.*, 982 F. Supp. 620, 625 (N.D. Ind. 1997); *Yarnell*, 890 P.2d at 614 (privilege does not extend to underlying facts).

reasonable attorney's fees on appeal, provided that he complies with RAP 14.4 and 18.1.[26]

HOUGHTON and HUNT, JJ., concur.

Review granted at 139 Wn.2d 1015 (2000).

---

[26]We have not considered the constitutionality of Section 409. It is arguable that Congress lacks the authority to dictate rules of discovery and rules of admissibility for use in *state* court. In particular, it is at least arguable that Congress lacks the authority to tell this state, or any state, that it "shall not" disclose or admit, in *state* court litigation, "reports . . . or data compiled or collected" by a *state* agency (e.g., Pierce County's Public Works Department). Throughout this opinion, we have *assumed* that section 409 is constitutional, because neither party has raised or briefed that question.