[No. 31258-1-II.   Division Two.   April 27, 2005.]

IGNACIO GUILLEN, *as Guardian*, ET AL., *Respondents*, v. PIERCE COUNTY ET AL., *Petitioners*.

280

*Gerald A. Horne, Prosecuting Attorney*, and *Daniel R. Hamilton, Deputy*, for appellants.

*Salvador A. Mungia II* and *John B. Buckhalter* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, L.L.P.*), for respondents.

¶1 ARMSTRONG, J. — The Guillens brought two identical suits against Pierce County, voluntarily dismissed both under CR 41(a)(1)(B), and refiled the same suit a third time. Pierce County appeals the trial court's denial of its CR 12(b)(1) motion to dismiss the third suit under CR 41(a)(4), the "two dismissal rule." Because under CR 41(a) a plaintiff's second unilateral voluntary dismissal is automatically with prejudice, and because the Guillens have not shown that the County waived the rule or should be estopped from invoking it, we reverse.

## FACTS

¶2 In July of 1996, Clementina Guillen-Alejandre died in an automobile accident at an intersection Pierce County designed and maintained. Guillen-Alejandre's four children were also injured in the accident. Guillen-Alejandre's husband, Ignacio Guillen, asked the County to disclose records relating to the intersection. *See Guillen v. Pierce County*, 96 Wn. App. 862, 865, 982 P.2d 123 (1999), *vacated by* 144 Wn.2d 696, 31 P.3d 628, 34 P.3d 1218 (2001), *rev'd in part by* 537 U.S. 129, 123 S. Ct. 720, 154 L. Ed. 2d 610 (2003).

¶3 After the County denied the request, Ignacio sought judicial review under the public disclosure act. The trial court granted Ignacio access to the records and the County appealed. *See Guillen*, 96 Wn. App. at 866. While the County's appeal was pending, Ignacio, on behalf of his wife's estate and the children, filed a wrongful death and personal injury action against Pierce County for the negli-

gent design and maintenance of the intersection. In its answer, Pierce County asserted that the Guillens failed to wait the statutorily required 60 days between giving the County notice of his claim and filing suit. RCW 4.96.020(4).[1]

¶4 In his lawsuit, Ignacio again sought the County's records pertaining to accidents at the intersection. *Guillen*, 96 Wn. App. at 867. When the County again refused to produce them, the trial court ordered the County to disclose several documents and reports. *See Guillen*, 96 Wn. App. at 867-68.

¶5 Pierce County then moved for discretionary review of the trial court's order. *See Guillen*, 96 Wn. App. at 868. The two appeals were consolidated and were ultimately resolved by the United States Supreme Court. *See Pierce County v. Guillen*, 537 U.S. 129, 146, 123 S. Ct. 720, 154 L. Ed. 2d 610 (2003) (holding that the scope of the evidentiary and discovery privilege provided by 23 U.S.C. § 152 and § 409 was not limited to documents created for purposes of participating in the program by the state public works department or other agencies, but it also included accident reports and other documents originally prepared by other entities, to the extent those documents were collected for the purpose of participating in the Hazard Elimination Program).

¶6 On January 2, 1999, the Guillens filed a second complaint, identical to the first, in Pierce County Superior Court. In a letter to the County, the Guillens explained that they were filing the complaint in response to the County's affirmative defense; they asserted that they were "still within the statutory time limits to file an action and [would] move to have the two causes of action joined in the near future." Clerk's Papers (CP) at 9, 11. They obtained a stay of proceedings for the second action during the appeal of the 1998 action. After the appeal, the superior court denied the Guillens' motion to consolidate the cases.

---

[1] RCW 4.96.020(4) states that "[n]o action shall be commenced against any local governmental entity for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof."

¶7 In May 2003, the County moved to dismiss the 1999 action, arguing that because the 1998 action was identical to the 1999 action, the "priority of action" rule required the court to dismiss the 1999 action. CP at 102-06. At argument on the motion, the court and the County's counsel had the following exchange:

> The Court: All right. So if the plaintiff were to take a dismissal on that first action, where would you be then?
>
> Mr. Hamilton: Well, that's an interesting issue. They haven't done that, Your Honor.
>
> The Court: I'm just asking because it seems as if, you know, it's not all that complicated.
>
> Mr. Hamilton: What should have been done—what should have been done is when the affirmative [claim filing] defense was raised, then I think by request for admission asked what do you mean by that and we expressly said you didn't do that and you are supposed to and then they filed instead of dismissing it, which the case says, they filed a cause of action.
>
> Number two, what they could have done and still can is this case should be dismissed. They can dismiss case number one, refile it because otherwise what you have is by this process is an end run around the statute and the Supreme Court has been quite clear that it requires strict compliance and the cases interpreting have been quite clear that the remedy for this is dismissal.

CP at 80-81.

¶8 Instead of granting the County's motion, the court transferred the 1999 case to the judge before whom the 1998 action was still pending.

¶9 A few days later, the Guillens moved for a voluntary nonsuit under CR 41(a)(1)(B) in each of their two actions. They sent their proposed motions and orders to the County and the County's counsel approved the form of the orders; each order stated it was without prejudice.[2] The County's

---

[2] The County's counsel "agreed to present plaintiffs' orders for signature and file the same because [his] office is directly across the street from the Courthouse and such would be a professional courtesy that would not require mailing it back to plaintiffs' counsel only for them to come back to the Courthouse." CP at 257.

counsel claims that because the Guillens' counsel never mentioned refiling, he believed the Guillens were ending the litigation because of the likely difficulty they would have in proving liability after the Supreme Court's ruling.

¶10 Four months later, the Guillens filed their third action on the same claims against Pierce County. The County immediately moved to dismiss the third action under CR 41(a)(4) and CR 12. The trial court denied the motion because it did not believe that the Guillens intended to harass the County. Further, it explained:

> I am going to deny the County's motion to dismiss under CR 12 [and CR 41]. I do think that the principles of waiver apply to this situation, in that, the actions of the plaintiff, the legal actions, were invited by arguments before another department. So I am going to deny the motion.

CP at 241.

## ANALYSIS

¶11 The County argues that CR 41(a) precluded the Guillens from voluntarily dismissing the first two suits and then filing the third suit. The County argues that it neither said or did anything that would estop it from invoking CR 41(a) and that waiver does not apply to CR 41(a).

¶12 The Guillens maintain that the County either waived the CR 41(a)(4) defense or should be estopped from asserting it. The Guillens also argue that CR 41(a) is intended to prevent harassing lawsuits and that the trial court properly concluded that they did not intend to harass the County.

### Standard of Review

■ ■ ¶13 We review the trial court's interpretation of CR 41(a) de novo; and, because the trial court decided the waiver issue solely on a written record, we review the waiver issue de novo also. *See Spokane County v. Specialty Auto & Truck Painting, Inc.*, 153 Wn.2d 238, 244, 103 P.3d

792 (2004) (citing *City of Seattle v. Guay*, 150 Wn.2d 288, 76 P.3d 231 (2003)); *see also Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994).

¶14 Under CR 41(a), the court must grant a voluntary dismissal where (1) all parties stipulate to it, or (2) the plaintiff moves for dismissal before resting. CR 41(a)(4) explains the effect of voluntary dismissals:

> Unless otherwise stated in the order of dismissal, the dismissal is without prejudice, except that an order of dismissal operates as an adjudication upon the merits when obtained by a plaintiff who has once dismissed an action based on or including the same claim in any court of the United States or of any state.

CR 41(a)(4).

## 1. The Guillens' Intent

■ ¶15 The trial court erred in considering the Guillens' intent. Since the trial court's ruling, the Supreme Court has held that the "two dismissal rule" of CR 41(a) applies automatically to unilateral dismissals by the plaintiff and "does not provide for court discretion to look into the reasons for the dismissal." *Specialty Auto*, 153 Wn.2d at 247.

## 2. Waiver

■■ ¶16 The trial court also erred in ruling that the County waived its right to assert the "two dismissal rule" under CR 41(a)(4). Waiver is the "intentional abandonment or relinquishment of a known right." *Mid-Town Ltd. P'ship v. Preston*, 69 Wn. App. 227, 233, 848 P.2d 1268 (1993). It must be shown by "substantial evidence" of unequivocal acts or conduct showing intent to waive, "and the conduct must also be inconsistent with any intention other than to waive." *Mid-Town*, 69 Wn. App. at 233 (citing *Dep't of Revenue v. Puget Sound Power & Light Co.*, 103 Wn.2d 501, 505, 694 P.2d 7 (1985)). The Guillens have the burden of proving waiver. *Jones v. Best*, 134 Wn.2d 232, 242, 950 P.2d 1 (1998) (citing *Rhodes v. Gould*, 19 Wn. App. 437, 441, 576 P.2d 914 (1978)).

## A. The Statements

¶17 The Guillens argue that the County waived its right to assert CR 41(a) because it stated on the record that "it would *not oppose* the Guillens' decision to dismiss the 1998 and 1999 actions then file this action." Br. of Resp't at 24. The County never used those words; and in fact, it is unclear what the County meant to say.

¶18 Nevertheless, the statements fall short of showing by substantial evidence that the County unequivocally intended to waive CR 41(a). The County did not explicitly state that the Guillens should dismiss both suits and refile a third identical suit, nor did it explicitly say that the County would not oppose a third filing. Counsel's statement, in the context of the County's motion to dismiss, can easily be read as suggesting that the *court* should grant the County's motion to dismiss the second action; the Guillens could then dismiss the first action and refile it in compliance with the 60-day waiting period. Taken in this light, the County was not urging the Guillens to dismiss both actions; rather, the County was arguing that the court should dismiss the second action and the Guillens should dismiss the first. If the court had dismissed the second action, the "two dismissal rule" would not have barred the Guillens from filing a third time. Only two *unilateral* dismissals trigger the CR 41(a) bar. *See Specialty Auto*, 153 Wn.2d at 248.

¶19 The Guillens also assert that the County "further ratified its in-court oral statements by signing the orders of dismissal, which dismissed both the 1998 and 1999 actions without prejudice," stating that "[t]here was certainly no ambiguity in its written representations." Br. of Resp't at 19. The County asserts that when it agreed to sign the orders, it never stipulated to dismissal without prejudice, it was aware of the effect of two unilateral voluntary dismissals of identical suits under CR 41(a)(1)(B) and, when it signed the orders "as to form," it assumed the Guillens were intending to drop their lawsuits altogether.

¶20 Approval of a court's order "as to form" is not necessarily an unequivocal expression of approval of the substance of the order. "As to" is a limiting preposition. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 134 (1969). It means "with reference to" or "in regard to," modifying an object. *See* WEBSTER'S at 134. Thus, the County's endorsement of the orders was a limited approval. *Black's Law Dictionary* defines "form" as "[t]he outer shape or structure of something, as distinguished from its substance or matter." BLACK'S LAW DICTIONARY at 678 (8th ed. 2004). Accordingly, "approval as to form" means approval of the structure of something, as opposed to its substance. For example, in *Teevin v. Wyatt*, 75 Wn. App. 110, 116, 876 P.2d 944 (1994), a city attorney's endorsement as to the form of a judgment that granted the plaintiff prejudgment interest did not express an intent to waive the city's immunity from prejudgment interest.[3]

¶21 By agreeing "as to form" of the orders, the County simply acknowledged that it agreed to the structure of the plaintiffs' unilateral motions for voluntary nonsuit under CR 41(a)(1)(B). In *Specialty Auto*, the County made a similar argument to the argument the Guillens make today, claiming that the "two dismissal rule" did not apply because the second dismissal was the "product of negotiation and agreement between the parties." *Specialty Auto*, 153 Wn.2d at 247. The court rejected that argument for several reasons. First, the dismissals were filed ex parte and did not refer to an agreement; and more importantly, the court reiterated that CR 41(a) does not allow the court to "look into the reasons for the dismissal." *Specialty Auto*, 153 Wn.2d at 247. The court also rejected the County's argument that CR 41(a) did not apply because the orders stated they were without prejudice; the court reasoned that the plain language of the rule "does not support this argument" and further, that the rule is "self-executing." *Specialty Auto*,

---

[3] Consistent with this position, the County made this statement to the lower court: "The law is clear—also, when you—we sign something as to form, approved as to form, that expressly means you are not agreeing to content; you are agreeing to the form. And the form is fine. So there is no issue there." CP at 241.

153 Wn.2d at 248. Implicit in these statements is the notion that a second unilateral dismissal is with prejudice regardless of what the order states. Thus, the court has no discretion to grant a second voluntary nonsuit without prejudice when the motion is brought unilaterally by a plaintiff who has already dismissed the same action once. *See Specialty Auto*, 153 Wn.2d at 248.

## B. The Conduct

¶22 The Guillens also argue that the County consented to dismissal of both suits without prejudice and waived its right to assert CR 41(a)(4) when it delivered the two motions to the court. But in its affidavit in support of reconsideration, the County maintained that it delivered the motions to the court as a professional courtesy because its office was close to the court; it did not represent an endorsement of dismissal "without prejudice." CP at 257.[4] It maintains that the Guillens' counsel did not mention a third filing and that the County believed the Guillens were abandoning their claims because of the costs and the difficulty of proving liability in light of the Supreme Court's ruling on discovery. The Guillens offer no affidavit or evidence contradicting these statements.

¶23 The Guillens fail to show that the County unequivocally intended to waive its rights under CR 41(a).

## C. Estoppel

¶24 The Guillens argue that the County should be equitably estopped from invoking CR 41(a). Although the trial court did not find estoppel, we address the argument because we can affirm a trial court on any grounds.

---

[4] It also explained that "one of plaintiffs' counsel . . . left a voice mail on [its] telephone informing him that plaintiffs had unilaterally decided to voluntarily dismiss both causes of action and that he would be sending [counsel for the County] a proposed motion and order for his signature." CP 256-57. It claims that the Guillens never requested a stipulation to the dismissal under CR 41(a)(1)(A). The County claims that it agreed to present plaintiffs' orders for signature and file them "because [its] office is directly across the street from the Courthouse and such would be a professional courtesy that would not require mailing it back to plaintiffs' counsel only for them to come back to the Courthouse." CP at 257.

(1) Equitable Estoppel

¶25 Equitable estoppel against the government is not favored. *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998). Thus, when it is asserted against the government, it must be "necessary to prevent a manifest injustice, and the exercise of government functions must not be impaired as a result." *Theodoratus*, 135 Wn.2d at 599. Also, a plaintiff must prove each element by "clear, cogent, and convincing evidence." *Theodoratus*, 135 Wn.2d at 599; *see also Laymon v. Dep't of Natural Res.*, 99 Wn. App. 518, 526, 994 P.2d 232 (2000).

¶26 To equitably estop the County, the Guillens must prove: "(1) an admission, statement or act inconsistent with a claim later asserted; (2) reasonable reliance on that admission, statement, or act by the other party; and (3) injury to the relying party if the court permits the first party to contradict or repudiate the admission, statement or act." *Theodoratus*, 135 Wn.2d at 599 (citing *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 831, 881 P.2d 986 (1994)).

¶27 The Guillens argue that the County's statement before the trial court that the Guillens could dismiss and refile the first action is inconsistent with the County's later claim that CR 41(a) barred the refiling. As we have discussed, the County's statement before the trial court can be reasonably read as asking *the court* to dismiss the second action and then suggesting that the Guillens could dismiss the first and refile. Thus, the statement does not establish by clear, cogent, and convincing evidence that the County changed its position.

¶28 But even if we did consider the statement inconsistent, the Guillens cannot show they had a right to reasonably rely on it. The County's statement is one of law. The County did not say that although CR 41(a) might bar a third filing, the County would not raise CR 41(a) as a defense. Rather, the County said that if the Guillens dismissed the first action, they could refile. At best, this is a statement of what the law would allow the Guillens to do.

But "[w]here both parties can determine the law and have knowledge of the underlying facts, estoppel cannot lie." *Lybbert v. Grant County*, 141 Wn.2d 29, 35, 1 P.3d 1124 (2000) (citing *Chem. Bank v. Wash. Pub. Power Supply Sys.*, 102 Wn.2d 874, 905, 691 P.2d 524 (1984)). In *Lybbert*, the plaintiffs could not establish justifiable reliance for equitable estoppel when they relied on the county's failure to expressly claim, before the statute of limitations expired, that service of process was ineffective. *Lybbert*, 141 Wn.2d at 36. The statute governing service of process on counties is explicit that plaintiffs must serve the county auditor with process. *Lybbert*, 141 Wn.2d at 36. In *Lybbert*, the plaintiffs did not. *Lybbert*, 141 Wn.2d at 36. The court reasoned that the clear statutory mandate and the facts were available to both sides and, therefore, plaintiffs could not reasonably rely on the county's silence. *Lybbert*, 141 Wn.2d at 37.

¶29 Here, CR 41 is plainly written. When a plaintiff unilaterally and voluntarily dismisses the same claim twice, the second dismissal is with prejudice. And the Guillens knew the facts of the two dismissals as well as the County. Yet they dismissed two actions and tried to bring a third. Because the Guillens were as well equipped as the County to determine the legal effect of two unilateral dismissals, they have not shown that the County should be equitably estopped.

(2) Judicial Estoppel

¶30 Judicial estoppel, similar to equitable estoppel, precludes a party from gaining an advantage by taking one position and then seeking a second advantage by taking an incompatible position in a later action. *Johnson v. Si-Cor, Inc.*, 107 Wn. App. 902, 906, 28 P.3d 832 (2001). As we have discussed, the Guillens cannot show that the County's statements before the trial court are inconsistent with the County's later position that the "two dismissal rule" applies and bars the Guillens' third filing.

¶31 We reverse and remand for the trial court to dismiss the action.

HUNT, J., concurs.

¶32 MORGAN, A.C.J. (dissenting) — The plaintiffs brought a road-liability case against Pierce County. The County responded by denying a great deal of obviously relevant discovery pursuant to its erroneous reading of a federal funding statute and by asserting that the claim-filing statute had not been met. On the discovery matter, two different trial courts (Judge John A. McCarthy in the 1998 personal injury case and Judge Frederick B. Hayes in a related case based on the public disclosure act, chapter 42.17 RCW) rejected the County's position. We granted discretionary review and rejected the County's position; the Washington Supreme Court granted discretionary review and rejected the County's position; and the United States Supreme Court granted discretionary review and rejected the County's position. The United States Supreme Court remanded to the Washington Supreme Court, which in turn remanded to the Pierce County Superior Court for further proceedings.

¶33 Meanwhile, the plaintiffs tried to meet the County's technical claim filing objections by filing a second personal injury complaint that "was word for word 'identical' to their first complaint."[5] This second complaint was assigned to Judge Beverly Grant and remained dormant until the discovery appeals ended. After the first personal injury complaint had been remanded to Judge McCarthy's court, however, the County asked Judge Grant to dismiss the second complaint based on what the County calls a "priority of action" rule.

¶34 Judge Grant heard the County's motion on May 23, 2003. The County argued that "what [the plaintiffs] should have done, *and still can*" do, was dismiss and refile their

---

[5] Br. of Pet'r at 2.

first personal injury complaint.[6] On June 2, 2003, Judge Grant denied the motion to dismiss but essentially consolidated the two identical personal injury complaints by transferring the second one to Judge McCarthy's court, where the first complaint was already pending. Three days later, on June 5, 2003, the plaintiffs, in apparent reliance on the County's statement about what they "should have done, and still can" do, dismissed both complaints and refiled the case.

¶35 Surprisingly, the County then brought another motion to dismiss. Disavowing the position it had announced on May 23, it now argued that the plaintiffs were *not* entitled to dismiss and refile and should be permanently barred from proceeding. Correctly perceiving the overall situation, the trial court denied this inconsistent motion to dismiss. Unfortunately, this court *again* granted discretionary review, triggering yet another interlocutory review with no trial yet in sight.

¶36 The trial court should be affirmed for at least three reasons. First, the two personal injury complaints were really just one complaint by the time they were dismissed. They were "word for word 'identical,' " and they were dismissed virtually simultaneously. Judge Grant had transferred the second complaint to Judge McCarthy, essentially so that he could handle the two as one. Because the two complaints were really one at the time of dismissal, *Specialty Auto* is distinguishable,[7] CR 41(a)(4) is not applicable, and Judge McCarthy correctly declined to dismiss.

¶37 Second, the County is estopped from reversing the position that it announced on May 23. By saying that "what [the plaintiffs] should have done, *and still can*" do, is dismiss and refile their personal injury complaint, it invited

---

[6] Br. of Resp't at 6.

[7] In *Spokane County v. Specialty Auto & Truck Painting, Inc.*, 119 Wn. App. 391, 79 P.3d 448 (2003), *aff'd*, 153 Wn.2d 238, 103 P.3d 792 (2004), the complaints were not word for word identical. They were not informally consolidated by being assigned to the same department for handling. And rather than being simultaneously dismissed, one was dismissed on January 4, 2001, and the other was dismissed on April 10, 2001.

the plaintiffs to dismiss and refile—but then, when the plaintiffs did that, the County took exactly the opposite position. The County should not benefit from such machinations.

¶38 Third, to construe the rules so woodenly as to require dismissal with prejudice results in a travesty of justice. CR 1 requires that the Civil Rules "be construed to secure the just, speedy, and inexpensive determination of every action." Although it is too late to secure the speedy or inexpensive determination of this action, partly because of our own improvident grants of discretionary review, it is not too late to secure a just determination on the merits. Far from abusing the system by filing multiple complaints on the same subject, the plaintiffs were forced to the United States Supreme Court on discovery issues and later tried to meet the County's claim filing objections by using the very solution that the County itself had recommended. Strongly believing that we should reject the County's repeated efforts to prevent a determination on the merits, I respectfully dissent.

Review denied at 156 Wn.2d 1006 (2006).