534 P.2d 271

**STATE of Arizona, Appellant,**

v.

**Howard E. BROOKS and Erma Brooks, husband and wife, Appellees.**

**No. I CA–CIV 2379.**

Court of Appeals of Arizona, Division 1, Department B.

April 22, 1975.

Rehearing Denied June 4, 1975.

Review Denied July 1, 1975.

Burch, Cracchiolo, Levi, Guyer & Weyl by Daniel Cracchiolo, Phoenix, for appellant.

Meadow, Nastro & Thrasher by Daniel E. Nastro, Phoenix, for appellees.

## OPINION

JACOBSON, Presiding Judge.

This appeal primarily concerns the sufficiency of a "claim" against the State of Arizona in a negligence action as a prerequisite for suit against the State.

The underlying facts giving rise to the accident which is the subject matter of this litigation are not in dispute. On January 15, 1970, Chester R. Cappriotti agreed to board several horses at his home in Sunburst Farms, a subdivision located approximately 4½ miles west of the Black Canyon Highway, a controlled access freeway. The horses were placed in a corral located at the Cappriotti residence and were observed in the corral on the evening of January 15, 1970. On the morning of January 16, 1970, at approximately 6:30 a. m., the Cappriottis became aware that the horses were gone.

On that same morning at approximately 6:45 a. m., an Arizona Public Service vehicle struck a horse in the northbound lane of the Black Canyon Freeway, 1½ miles north of Bell Road. After being struck, the horse lay partially in the high-speed lane of Black Canyon Highway and partially on the dirt meridian separating the southbound and northbound lanes of traffic. Moments later, the plaintiff, Howard E. Brooks, struck the prone body of the horse, lost control of his vehicle, slid across the meridian and into the southbound lane of traffic where he was struck by another vehicle. The horse struck on the freeway was later ascertained to have been one of the horses corralled at the Cappriotti residence.

The Black Canyon Highway is a controlled access freeway having, at the point of the accident, two northbound lanes of traffic and two southbound lanes of traffic separated by a dirt meridian. The highway was equipped with an intermittent right-of-way fence that ended 700 feet north of Bell Road and began again approximately 3½ miles north of the point of the accident. The Bell Road entrance to the freeway was not equipped with cattleguards. It is thus possible that livestock finding their way to Bell Road could enter the freeway at this point. The highway was contructed in 1963, at which time the only known livestock in the area were thoroughbred horses stabled at Turf Paradise Race Track, approximately a half mile to the east of the highway, and two herds of sheep under the supervision of herders. In 1966, the Sunburst Farm Subdivisions was commenced. This subdivision caters to individuals who wish to keep livestock. Prior to this accident, there was no evidence that livestock were observed on the freeway at this point or that livestock were loose in the area, although the Highway Department was aware that livestock could physically enter the highway in the area in question.

Prior to trial, the defendant State of Arizona moved for summary judgment on the basis that plaintiff had failed to file and receive a disallowance of an administrative claim. The motion was supported by an affidavit of the head of the Highway Department's Adjustment & Claims Department describing the normal procedure for handling administrative claims and indicated no claim had been filed by the plaintiffs Brooks. The plaintiffs responded to this motion by producing the following letter from plaintiffs' counsel to the Attorney General of Arizona and asserting that this constituted a "claim" within the provisions of A.R.S. § 12–821 (1956):

"Gentlemen:

"Please be advised that Mr. Brooks has retained this office to represent his interest growing out of an accident [on January 16, 1970] on the Black Canyon Highway . . . .

"The purpose of this letter is to afford both the State and Maricopa County ample time and opportunity to investigate the manner in which the accident occurred because it appears that both the County and the State are liable for that accident.

\*   \*   \*   \*   \*   \*

"After you have made whatever investigation you deem appropriate, it would be appreciated if the appropriate individuals from both the State and the County would contact the undersigned in an effort to resolve this matter.

"As you are aware there are various statutory provisions regarding when and what kind of notice an injured party must give the governmental entities. If either of your organizations have any questions whatsoever with respect to supplying the kind of information required by any and all statutes, please direct your inquiries to the undersigned so that we might endeavor to supply any and all information requested by yourselves.

"We would appreciate being contacted by the appropriate individuals within 15 days from the date of this letter, so that we might make the appropriate decision

about how best to proceed to advance the interests of our client."

This letter was not answered by the Attorney General. The State's motion for summary judgment was denied.

The State subsequently raised the defense of failure to file a claim in its motion for directed verdict, motion for judgment NOV and motion for new trial.

■ Both parties agree that as a prerequisite to bringing suit against the State, it is necessary for the plaintiff to present a "claim" to the State. This agreement is based upon the holding in State v. Stone, 104 Ariz. 339, 452 P.2d 513 (1969):

> "We therefore hold . . . that henceforth the broadened scope of the state's subjection to negligence actions shall also be limited by the procedural requirements in § 12–821 of disallowance of any such claim, before a person may bring a suit of this nature against the state." 104 Ariz. at 342, 452 P.2d at 516.

A.R.S. § 12–821 (1956) in turn provides:

> "Persons having claims on contract or for negligence against the state, which have been disallowed, may on the terms and conditions set forth in this article, bring action thereon against the state and prosecute the action to final judgment."

The parties disagree as to what constitutes a "claim," what constitutes a "disallowance," and to whom the claim must be presented. On the one hand, the State contends that a "claim" must contain, at the bare minimum, the following: (1) an assertion of liability on behalf of the State in regard to a specifically described event sufficient to allow the State to investigate and determine its potential liability; and (2) an offer to settle for a fixed amount. Additionally, the claim must be directed to the agency of the state against which the liability is asserted.

The plaintiffs, on the other hand, contend that merely giving notice of the assertion of liability is sufficient and that such notice may be directed to the chief legal officer of the political subdivision involved.

The disagreement as to what constitutes a "claim" is derived from the vagueness of the statute itself. A.R.S. § 12–821 does not, by its terms, define what constitutes a claim or who has authority to disallow such a claim. In fairness to the legislature, it must be pointed out that a matter of presenting claims and their contents was provided for in other statutory enactments. See A.R.S. § 35–181.01 et seq. (1974). However, the Supreme Court has held that these provisions were not applicable to negligence suits against the State. State v. Stone, *supra*, 104 Ariz. at 431, 452 P.2d 513. It therefore becomes necessary for this court to determine what constitutes a claim within the meaning of A.R.S. § 12–821.

■ In making this determination it is important to keep in mind the purpose of such a claim requirement. It is generally held that the reason for adoption of "claims statutes" is threefold: (1) to afford an opportunity to the agency to investigate the merits of the claim and seasonably assess its potential for liability, (2) to afford the opportunity to arrive at a settlement of the controversy and thus avoid the litigation between the state and its citizens, and (3) to establish an orderly procedure by which the legislature will be advised of claims in instances where no provision has been made for payment. Farrell v. Placer County, 23 Cal.2d 624, 145 P.2d 570 (1944); See also State v. Stone, 8 Ariz. App. 118, 443 P.2d 933 (1968), vacated, 104 Ariz. 339, 452 P.2d 513 (1969); 45 Cal. Jr.2d State of California § 163 (1958).

■ This being the purpose of requiring a claim, it follows that a valid claim must contain enough information to allow the State to intelligently ascertain these purposes so that it can conscientiously allow or disallow that claim and if disallowed thereby trigger the right of the citizen to seek redress in the courts. This is necessarily so for A.R.S. § 12–821 not only contemplates the filing of a claim, it also

contemplates its *disallowance.* In our opinion, of prime importance to the State in making a determination of whether to allow or disallow a claim is knowledge of the amount which is claimed to be due the injured party. Numerous settlements of litigation are based not upon the question of liability alone, but upon the amount for which the suit can be settled. Thus, suits of questionable liability are settled because of the potential damages that may be assessed. Conversely, suits of no liability may be settled because the cost of defense may exceed the settlement. In short, "how much is it going to cost?" is an integral part of any intelligent determination of whether a claim should be allowed or disallowed. In this regard, most states and the federal government have required that tort claims against the sovereign contain an amount prayed for. *See* Calif. West's Ann.Gov.Code § 910 et seq. (1966); Federal Tort Claims Act, 28 U.S.C.A. § 2675(a) (1965).

Testing the letter "claim" in this case by the criteria established herein, it is obviously defective. While the letter does contain sufficient information to allow the State to investigate its potential liability, it is wholly defective in stating an amount that is sought to satisfy this potential liability. We therefore hold that plaintiffs' counsel's letter directed to the Attorney General did not constitute a "claim" within the meaning of A.R.S. § 12–821. There having been no claim filed, the jurisdictional prerequisites to filing suit required by State v. Stone, *supra,* were not satisfied, and the State's motion for summary judgment as well as its motions for directed verdict and judgment NOV should have been granted.

While we do not need to reach the issue of whether the claim, if valid, was properly presented to the Attorney General, in the interest of guidance to future litigants with the State, we touch briefly on this subject. In our opinion, the procedure to be followed is to file the claim with the state agency whose action or non-action gave rise to the liability creating event, rather than upon the Attorney General. We reach this conclusion for the reasons that under the authority of Santa Rita Mining Co. v. Department of Prop. Val., 111 Ariz. 368, 530 P.2d 360 (1975) the Attorney General is the state agency's legal representative and cannot exercise the power of that agency. In such capacity it is meaningless to serve the Attorney General with the claim as he could not, independently, exercise the power to allow or disallow the claim.

The State has raised other justiciable issues in this matter concerning its duty of care which we do not reach by reason of our holding on the claims issue.

For the reasons herein stated, the judgment of the trial court is reversed and the matter remanded with directions to enter judgment for the State of Arizona.

HAIRE, C. J., and EUBANK, J., concur.