890 P.2d 611

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, a Delaware cor-
poration, Petitioner,

v.

Hon. Michael A. YARNELL, Judge of the
Superior Court of the State of Arizona,
In and For the COUNTY OF MARICO-
PA, Respondent,

Mary E. ISBELL, For and on her Behalf
as surviving spouse of Richard Levonne
ISBELL, and For and on Behalf of Den-
nis Isbell, David Isbell, John Isbell, Mar-
sha Isbell and Joseph Isbell, the surviv-
ing children of Richard Levonne Isbell,
Real Parties in Interest.

The STATE of Arizona, acting By and
Through the ARIZONA DEPARTMENT
OF TRANSPORTATION and the Ari-
zona Corporation Commission, Petition-
er,

v.

Hon. Michael A. YARNELL, Judge of the
Superior Court of the State of Arizona,
In and For the COUNTY OF MARICO-
PA, Respondent,

Mary E. ISBELL, For and on her own
Behalf as surviving spouse of Richard
Levonne ISBELL, and For and on Be-
half of Dennis Isbell, David Isbell, John
Isbell, Marsha Isbell and Joseph Isbell,
the surviving children of Richard Le-
vonne Isbell, Real Parties in Interest.

No. CV–93–0106–PR.

Supreme Court of Arizona,
En Banc.

March 2, 1995.

Supplemented on Denial of Reconsideration
April 27, 1995.

Fennemore Craig by F. Pendleton Gaines, III and Mark H. Brain, Phoenix, for Southern Pacific Transp. Co.

Campana, Vieh & Strohm by Donald O. Loeb, Scottsdale, for the State of Arizona.

Begam, Lewis, Marks, Wolfe & Dasse by Elliot G. Wolfe and Cora Perez, Phoenix, for Mary Isbell, et al.

Haralson, Kinerk & Morey by D. Dale Haralson, Tucson, and The Langerman Law Offices by Amy G. Langerman, Phoenix, for The Arizona Trial Lawyers Ass'n, amicus curiae.

## OPINION

MARTONE, Justice.

We are asked to define the nature, scope and effect of 23 U.S.C. § 409 on the discoverability and admissibility of evidence in railroad-crossing tort claims.

## I. BACKGROUND

This is a wrongful death action brought by Mary Isbell as the surviving spouse of her husband, Richard, who died in 1990, when the milk truck he was driving collided with a train at a crossing in Chandler. Among other things, Mary alleges that the crossing was unreasonably dangerous and that both Southern Pacific Railroad Company and the State of Arizona are responsible for its condition. Seven years earlier, in 1983, the state identified the crossing as one at which automatic gates ought to be installed to improve its safety. In 1986, the corporation commission authorized the installation, but by 1990, when Richard died, the gates had not been installed.

Through discovery, Mary sought information on why the automatic gates had not been installed. She wanted facts about the crossing and other crossings in the state. She wanted to know why the corporation commission concluded that the crossing should be improved. The state moved for a protective order. Isbell moved for an order compelling discovery not only from the state, but from Southern Pacific. The state and Southern Pacific argued that the information sought was neither subject to discovery nor admissi-ble in evidence pursuant to 23 U.S.C. § 409, which provides as follows:

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for any other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

The state and Southern Pacific argued that the statute exempted from discovery not only the reports, surveys, schedules, lists, or data compilations made for the purposes identified in the statute, but also all the facts in those reports even if available from other sources. Isbell argued that if otherwise part of a federal improvement program, the statute only protected the reports themselves, and not the underlying facts. The trial court agreed with Isbell. It held that:

> While the actual 'reports, surveys, schedules, lists, or data' compilations (or calculations) prepared expressly for 'the purpose of identifying, evaluating, or planning the safety enhancement of ... railway-highway crossings' are neither discoverable nor admissible, simple factual information gathered for or contained in such reports or compilations is discoverable and is admissible *if* otherwise relevant and probative.... [a]n otherwise discoverable or admissible fact is not made non-discoverable or non-admissible simply by its inclusion in a privileged document or conversation.

Minute entry of December 3, 1992 at 27–28.

The trial court therefore denied the state's motion for protective order and granted Isbell's cross-motion for order compelling dis-

covery from the state and from Southern Pacific.

The state and Southern Pacific filed petitions for special action relief in the court of appeals. That court granted relief and held that in addition to the documents described in § 409, data that ends up in those documents, from whatever source derived, even a newspaper article, are neither subject to discovery nor admissible. *Southern Pac. Transp. Co. v. Yarnell,* 176 Ariz. 552, 863 P.2d 271 (App.1993). We granted review.

## II. ANALYSIS

So far as we are aware, the history of 23 U.S.C. § 409 is nonexistent. It is thus especially important to focus on the language itself. We diagram § 409 as follows. In relevant part, it covers:

(1) reports, surveys, schedules, lists or data;

(2) compiled;

(3) for the purpose of identifying, evaluating, or planning the safety enhancement of … railway-highway crossings;

(4) pursuant to 23 U.S.C. §§ 130, 144, and 152; and

(5) a location mentioned in such reports, surveys, schedules, lists or data.

■ Thus broken down, it seems evident that each of these requirements must be met before the discovery and admissibility provisions become operative. If we look only to words, we agree with the trial court that the statute immunizes from discovery and admissibility the documents prepared in connection with the relevant federal safety program. This would allow those associated with the program to prepare such documents without fear that they would be produced. But the statute does not purport to protect facts within the personal knowledge of a party, unless that knowledge comes solely from the protected document. For example, a railroad may know that there were twenty such accidents at a particular crossing. Compiling this data for the safety improvement program under the statute makes the compilation itself nondiscoverable and nonadmissible. But the railroad would have to reveal that there were twenty such accidents. It would

not have to reveal any report, survey, schedule, list or data compilation made in connection with the safety enhancement program. This seems to us to comport with both the express language of the statute and its spirit. Construing the statute to cover all facts that ultimately end up in such compilations, from whatever source derived, would go far beyond protecting the safety enhancement process and indeed would turn that process on its head. It would prevent the parties from proving claims that could otherwise have been proven had there been no safety enhancement project. The Supreme Court has held that the federal railroad safety enhancement program does not preempt state damage claims. *CSX Transp., Inc. v. Easterwood,* — U.S. —, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). The Court said:

> [T]he scheme of negligence liability could just as easily complement these regulations by encouraging railroads—the entities arguably most familiar with crossing conditions—to provide current and complete information to the state agency responsible for determining priorities for improvement projects….

— U.S. at —, 113 S.Ct. at 1739.

But state damage claims can only be proved with facts. The Supreme Court has acknowledged that the federal statutory scheme may peacefully coexist with the state tort scheme. In fact, they complement each other. But the breadth of exemption from discovery and admissibility argued by Southern Pacific and the state, and acknowledged by the court of appeals, would sacrifice the state tort scheme on the altar of the federal statutory scheme.

We disagree with the court of appeals' assertion that "the clear weight of authority holds that data as well as documents are protected by the statute." *See Southern Pac. Transp. Co.,* 176 Ariz. at 555, 863 P.2d at 274. So far as we know, only the United States Court of Appeals for the Eighth Circuit reads the statute so broadly as to preclude data from other sources once that data is also compiled in a statutory report. *Robertson v. Union Pac. R.R.,* 954 F.2d 1433, 1435 (8th Cir.1992) (excluding even newspaper article); *accord Lusby v. Union Pac.*

*R.R.*, 4 F.3d 639, 641 (8th Cir.1993). Recently, the Tennessee Court of Appeals, relying on our court of appeals decision, adopted a similar interpretation. *See Seaton v. Johnson,* No. 01–A–01–9408–CH–00372, 1995 WL 33681, at *6 (Tenn.App., Jan. 27, 1995).

On the other hand, several courts have specifically rejected such a broad interpretation, and instead read the statute to allow discovery of the underlying facts. *Rick v. State Dep't of Transp. and Dev.,* 630 So.2d 1271, 1276 (La.1994) (admitting accident reports, traffic counts and other raw data); *Wiedeman v. Dixie Elec. Membership Corp.,* 627 So.2d 170, 173 (La.1993) ("Section 409 creates a privilege for compilations enumerated in the statute, but the privilege does not extend to reports and data gathered for or incorporated into such compilations"); *Light v. State,* 149 Misc.2d 75, 560 N.Y.S.2d 962, 965 (Ct.Cl.1990) (the statute excludes reports, but "does not, expressly or by implication, make the information contained in such reports confidential"); *cf. Kitts v. Norfolk and W. Ry.,* 152 F.R.D. 78, 81 (S.D.W.Va. 1993) (Section 409 "does not accord protection for documents or data prepared or compiled for some entirely separate and distinct purpose, even if the contents of the same, or parts thereof, eventually become ingredients thrown into a soup kettle with a distinct flavor of safety enhancement.").

Although other cases have held that the inadmissibility of the reports extended to testimony based directly on them, they never reached the issue of the discoverability or admissibility of the underlying facts. *Harrison v. Burlington N. R.R.,* 965 F.2d 155, 160 n. 9 (7th Cir.1992) (excluding official report and testimony based upon it, but not addressing "their observations of the crossing that were not contained in the letter and report"); *Sawyer v. Illinois Cent. Gulf R.R.,* 606 So.2d 1069, 1073 (Miss.1992) (excluding reports and testimony as to their contents); *Claspill v. Missouri Pac. R.R.,* 793 S.W.2d 139, 140 (Mo.1990) (excluding a list of "most dangerous railroad crossings" prepared under § 409 and testimony based on it); *cf. Perkins v. Ohio Dep't of Transp.,* 65 Ohio App.3d 487, 499–500, 584 N.E.2d 794, 802 (1989) (excluding evidence of any accidents "which came to the attention of the defendant solely as a result of its programs operated pursuant to a federal hazard elimination program" but ambiguous as to whether that evidence is admissible from sources apart from the statutory report).

■ Of the relatively few cases on point, we find the logic of those courts narrowly interpreting § 409 to be directly supported by statutory analysis. Statutes, of course, ought to be read in ways that give an integrated meaning to all their parts. 23 U.S.C. § 409 includes "reports," "surveys," "schedules," "lists," and "data," compiled "pursuant to sections 130, 144 and 152 of this Title." Section 409 uses words like "reports" and "surveys" in the same way in which those words are used in §§ 130, 144, and 152. For example, 23 U.S.C. § 130(d), requires states to conduct "a *survey* of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a *schedule* of projects for this purpose." (Emphasis added). Thus when § 409 refers to "surveys" and "schedules," it is referring specifically to those surveys and schedules prepared pursuant to 23 U.S.C. § 130(d). Similarly, 23 U.S.C. § 144(e) (a highway bridge replacement program not applicable here) requires the federal government to inventory, classify, and prioritize highway bridges and categorizes this as "*data.*" (Emphasis added). And, 23 U.S.C. § 152 (hazardous roads), requires the states to "*survey*" roads, implement a "*schedule*" of projects for improvement, and submit a "*report*" to the federal government on progress being made to implement highway safety improvement projects. 23 U.S.C. § 152(a), (g) (emphasis added).

It can thus be seen that each of the categories of information described in 23 U.S.C. § 409 has its origin in the programs described in 23 U.S.C. §§ 130, 144, and 152. These are words of art. This is powerful support for the proposition that the documents exempt from discovery and excluded from evidence under § 409 are precisely the documents described and prepared under the authority of §§ 130, 144, and 152, and no others. This would promote the integrity of

the federal regulatory scheme without compromising the integrity of the parallel state tort system.

■ We thus reject a broad interpretation of 23 U.S.C. § 409 and agree with the view of those courts giving § 409 its plain meaning. It follows, therefore, that the trial judge did not err in denying the state's motion for protective order and granting Isbell's cross-motion for order compelling discovery from the state and from Southern Pacific. The record here is insufficient for us to apply our understanding of this statute to the specific materials which were the subject of the motions. We therefore vacate the opinion of the court of appeals, affirm the order of the trial court, and remand for further proceedings consistent with this opinion.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.