9 P.3d 322

Mary E. ISBELL, for and on her own behalf as surviving spouse of Richard Levonne ISBELL, for and on behalf of Dennis Isbell, David Isbell, John Isbell, Marsha Isbell, and Joseph Isbell, the surviving children of Richard Levonne Isbell, Plaintiffs–Appellees.

v.

STATE of Arizona, Defendant–Appellant.

No. CV–99–0330–PR.

Supreme Court of Arizona,
En Banc.

Aug. 31, 2000.

**292**

Begam, Lewis, Marks & Wolfe, P.A. By Elliott G. Wolfe and Dena Rosen Epstein, Phoenix, Attorneys for Mary E. Isbell, et al.

Campana, Vieh, Shore, Owens & Loeb, P.C. By Donald O. Loeb, Scottsdale, Attorneys for State of Arizona.

The Langerman Law Offices By Amy G. Langerman, Phoenix, Haralson, Miller, Pitt & McAnally By Dale Haralson and John P. Leader, Tucson, Jeffrey White, Washington, D.C., Richard Middleton, Jr., Savannah, Georgia, Attorneys for Amici Curiae, Arizona Trial Lawyers Association and American Trial Lawyers Association.

## O P I N I O N

MARTONE, Justice.

¶ 1 This is a wrongful death action brought by Isbell against the State of Arizona for the death of her husband, who was killed when the truck he was driving collided with a train at a crossing in Chandler. The case was here before. *Southern Pac. Transp. Co. v. Yarnell*, 181 Ariz. 316, 890 P.2d 611 (1995). Since then, Southern Pacific settled. the case against Maricopa County is resolved by separate opinion. We here address only the claim against the State.

¶ 2 In *Yarnell*, we held "that the documents exempt from discovery and excluded from evidence under [23 U.S.C.] § 409 are precisely the documents described and prepared under the authority of §§ 130, 144, and 152, and no others." 181 Ariz. at 319, 890 P.2d at 614. On remand, the trial court admitted into evidence an order of the Arizona Corporation Commission, filed four years before the accident, which required improvements at the crossing. The jury returned a verdict in favor of Isbell and against the State. The court of appeals reversed, holding, among other things, that the order

of the Commission was inadmissible under 23 U.S.C. § 409. Believing that this ruling was inconsistent with our opinion in *Yarnell*, we granted review. Rule 23(c)(3), Ariz. R. Civ. App. P.

## I.

¶ 3 In 1995, Congress amended 23 U.S.C. § 409 to add the words "or collected" after the words "data compiled." The amendment was designed to ensure that "raw data collected prior to being made part of any formal or bound report" is also within the scope of the statute. H.R.Rep. No. 104–246, at 59 (1995), *reprinted in* 1995 U.S.C.C.A.N. 522, 551. This makes it clear that if data is either compiled or collected pursuant to 23 U.S.C. § 130, then the rule of exclusion under § 409 applies.

¶ 4 The court of appeals believed that this amendment made a difference here. *Isbell v. State of Arizona*, 1 CA–CV 98–0209, slip op. at 7–8 (App. filed May 13, 1999). It believed that the order of the Commission was a "report" within the meaning of § 409, but that even if it was not, it contained protected "collected" data. *Id.* at 9. We disagree.

¶ 5 The Commission order is not a document described and prepared under the authority of 23 U.S.C. § 130. *Yarnell*, 181 Ariz. at 319, 890 P.2d at 614. 23 U.S.C. § 130(d) requires states to conduct "a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." The order of the Commission is neither a survey nor a schedule within the meaning of this statute. Nor was it prepared under its authority. Instead, the Commission prepared the order in this case under the authority of A.R.S. §§ 40–337 and 40–337.01, Arizona's own statutory scheme for regulating railroads. The Commission was authorized and obligated to issue such orders long before there was any federal program. Its order quotes § 40–337(C) and was entered because A.R.S. § 40–337.01(B) requires the Commission to issue such an order whenever it determines that a crossing

is sufficiently hazardous to warrant automatic gates. This obligation existed with or without federal funding. That the order acknowledged the existence of federal funding did not relieve the Commission of its requirement to enter such an order under Arizona law. In addition, the State does not controvert Isbell's contention that any federal funding here was approved before the order was entered.

¶ 6 There is yet another reason why the order is not within the scope of 23 U.S.C. § 409. Those documents excluded from evidence under 23 U.S.C. § 409 are also exempt from discovery. And yet orders of the Commission are matters of public record. It cannot be reasonably contended that 23 U.S.C. § 409 would require that all orders of the Commission be filed under seal. This, it seems to us, strongly supports the idea that 23 U.S.C. § 409 does not have within its scope public orders filed by state administrative agencies or courts.

¶ 7 But the court of appeals also contended that parts of the order were protected as containing data "collected" within the meaning of the statutory amendment. There is nothing in this record to suggest that the little data referred to in the order was collected for the purpose of the federal program. We agree that the statutory amendment would protect the raw data that went into a survey or schedule prepared under the authority of 23 U.S.C. § 130(d). But there is no suggestion in this case that the data in the Commission's order is of that kind.

¶ 8 Thus, the order of the Commission was properly admitted in this case and it was error for the court of appeals to reverse on that basis. Because the court of appeals reversed on two subsidiary bases, we, of necessity, address those as well.

## II.

■ ¶ 9 The court of appeals held that the trial court erred in excluding evidence of the absence of prior accidents at the crossing because such evidence would tend to prove the reasonableness of the State's failure to require the railroad to improve the crossing more quickly. But under *Jones v. Pak–Mor*

*Manufacturing Co.*, 145 Ariz. 121, 128, 700 P.2d 819, 826 (1985), we explained that a very careful foundation must be laid before even otherwise relevant evidence of this sort could be admitted. We acknowledged that the trial court has discretion under Rule 403, Ariz. R. Evid., to admit this kind of evidence as long as the danger of unfair prejudice does not substantially out weigh its probative value. *Id.* at 127–28, 700 P.2d at 825–26. We said that the scale tips strongly against the admission of this kind of evidence because the non-existence of accidents does not demonstrate "how many near-accidents, [ ] or how many fortuitous escapes from injury, may have occurred, and it leaves the opponent of the evidence no method to ascertain and identify those who may have passed by the area, under what conditions, and with what risks or experience." *Id.* at 128, 700 P.2d at 826. Because the State did not offer this kind of foundational evidence, we cannot say that the trial court abused its discretion under Rule 403. It was thus error to reverse on this bases.

## III.

■ ¶ 10 The court of appeals also reversed for the failure of the trial court to give the jury a contributory negligence per se instruction for a violation of A.R.S. § 28–851(A)(3). That statute requires a motorist to stop before crossing railroad tracks when an approaching train emits a signal audible from 1,500 feet. We believe there was insufficient evidence to support such an instruction in this case.

¶ 11 The only experts who testified on this point at trial concluded that the decedent could not have heard the train's horn because of the kind of truck he was driving, and its relationship to nearby buildings and trees. The only lay witness who testified about this at trial said that he had difficulty hearing the horn on a separate occasion when he approached the crossing from the same direction as the decedent, while driving an automobile, which would have been less noisy than decedent's tractor trailer. That the same witness could hear the train's horn inside a tin warehouse right next to the tracks does not affect the outcome.

¶ 12 The deposition testimony offered by the State established that the train's horn sounded, but did not establish that the decedent could have heard it because none of these witnesses were in sufficiently comparable circumstances. Indeed, two of them were on the train. Finally, there was no showing that meeting a federal decibel standard meant that the horn could be heard from 1,500 feet under the conditions here.

¶ 13 In short, there was insufficient evidence that the decedent violated the statute. Thus, the State was not entitled to the contributory negligence *per se* instruction.[1]

### IV.

¶ 14 We vacate the memorandum decision of the court of appeals and affirm the judgment of the superior court.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, STANLEY G. FELDMAN, Justice Ruth V. McGREGOR, Justice.

---

1. Even if such an instruction were warranted, under article 18, § 5 of the Arizona Constitution, the jury would have been instructed that the defense of contributory negligence was theirs to apply or not. In this case, the jury heard all of the horn evidence. The State argued that the horn should have been heard by the decedent, and the jury nevertheless returned a verdict in favor of Isbell.