35 P.3d 97

Michael HERNANDEZ and Ida
Hernandez, husband and wife,
Plaintiffs–Appellants,

v.

STATE of Arizona, Arizona State Park
Service, Defendants–Appellees.

No. 1 CA–CV–01–0008.

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 23, 2001.

Goldberg & Osborne by Joel T. Ireland, Tucson, Attorneys for Plaintiffs–Appellants.

Janet Napolitano, Attorney General, by Daniel P. Schaack, Phoenix, Assistant Attorney General, Attorneys for Defendants–Appellees.

## OPINION

WEISBERG, Judge.

¶ 1 Appellants Michael Hernandez ("Hernandez") and Ida Hernandez raise several issues on appeal, including a challenge to the use of their notice of claim for impeachment purposes. For the following reasons, we affirm the trial court's rulings.

### I.  BACKGROUND

¶ 2 We review the facts in the light most favorable to the prevailing party. *Todaro v. Gardner,* 72 Ariz. 87, 91, 231 P.2d 435, 437 (1951). Hernandez and his family arrived at Patagonia Lake State Park at dusk on a Friday. They had visited the park at least twice before.

¶ 3 Hernandez and his son, Michael Hernandez, Jr., ("Michael Jr.") attempted to buy bait at the Patagonia Lake Camp Store. They learned that they could only purchase bait at the marina store, which was about to close.

¶ 4 Hernandez had previously visited the marina store and therefore knew that the camp store was on a hill above it. Notwithstanding, he and Michael Jr. crossed a parking lot area adjacent to the camp store and stepped over a cable fence supported by posts three feet high. They encountered a "very steep" hill on which "you could lose your balance ... easily." At the bottom of the slope was a retaining wall with a fourteen-foot drop-off to the road below. Unaware of the drop-off, Hernandez stepped off the retaining wall. The fall knocked out several of his front teeth and fractured his left wrist.

¶ 5 Appellants filed a negligence claim against the State of Arizona. Following a five-day trial, the jury returned a verdict in the state's favor. This appeal followed.

## II. DISCUSSION

### A. The Trial Court Did Not Abuse Its Discretion By Excluding An ADOT Memorandum.

¶ 6 We will not reverse a trial court's decision to admit or exclude evidence absent a clear abuse of discretion, with resulting prejudice. *Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 506, 917 P.2d 222, 235 (1996) (citing *Selby v. Savard,* 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982)). Likewise, we will not reverse the denial of a motion for a new trial absent a clear showing that the trial court abused its discretion. *Wendling v. Southwest Sav. & Loan Ass'n,* 143 Ariz. 599, 602, 694 P.2d 1213, 1216 (App.1984).

¶ 7 Appellants first argue that the trial court abused its discretion by excluding a memorandum exchanged by two Arizona Department of Transportation ("ADOT") engineers suggesting that ADOT should "place adequate warning signs [at Painted Cliffs rest area] so that the public, [e]specially children, are notified of the danger posed by access to the retaining walls." The ADOT memo did not, however, address the retaining wall at Patagonia Lake State Park and expressed no statewide safety policy on retaining walls. Moreover, the dangers posed at the two sites are dissimilar: whereas the Painted Cliff wall consists of blocks forming steps that enable people to scale it, the Patagonia Lake wall is not scalable and is cordoned off. In light of these factors, we conclude that the ADOT memo was irrelevant and the trial court did not abuse its discretion in excluding it.[1]

### B. The Trial Court Did Not Abuse Its Discretion In Admitting The Notice Of Claim For The Purpose Of Impeaching Hernandez.

¶ 8 Hernandez next protests the admission of his notice of claim for the purpose of impeaching his trial testimony. According to the notice of claim:

At about, 8:30 p.m. Mr. Hernandez was walking on a trail leading to the lake marina. As Mr. Hernandez and Michael followed the trail, Mr. Hernandez stepped forward, believing he was on the trail, fell off a cliff, and fell approximately 25 feet....

At 8:30 p.m., it was very dark, and Mr. Hernandez could clearly see the lights of the marina, but because there were no markings on the trail, and no railing along the cliff, he was unable to see that the trail curved, and stepped off the edge of the cliff.

Hernandez deviated from this account at trial by testifying that there was no trail and that he stepped off the edge of a retaining wall, not a cliff. The state accordingly used the notice of claim to impeach Hernandez's new version of the events.

¶ 9 Evidence impeaching a witness's credibility is always relevant. *See State v. McCall,* 139 Ariz. 147, 158, 677 P.2d 920, 931 (1983). Prior inconsistent statements are admissible for this purpose. *See State v. Saenz,* 88 Ariz. 154, 156–57, 353 P.2d 1026, 1028–29 (1960) (holding that a police officer's notes were relevant as prior and possibly inconsistent statements made and recorded by the witness); *Parkinson v. Farmers Ins. Co.,* 122 Ariz. 343, 345, 594 P.2d 1039, 1041 (App.1979) (holding that insured's son's prior inconsistent statements impeached his more recent claim that he acted accidentally).[2] Because a party's credi-

---

1. In their Reply Brief, appellants also contend that the verdict should be overturned as a sanction for the untimely disclosure of the ADOT memo in violation of Rule 26.1 of the Arizona Rules of Civil Procedure. However, appellants waived this argument by failing to raise it in their Opening Brief. *See Nelson v. Rice,* 198 Ariz. 563, 567 n. 3, 12 P.3d 238, 242 n. 3 (App. 2000).

2. The dissent nevertheless argues that Hernandez's rendition of the facts in the notice of claim was irrelevant because the parties had stipulated to the facts prior to trial and that, therefore, the "issue to be tried ... was whether the state was required to place notices at the retaining wall warning of its dangers, not whether Mr. Hernandez or his lawyers correctly recalled the facts surrounding his fall." However, Hernandez's

bility is always relevant, *McCall*, 139 Ariz. at 158, 677 P.2d at 931, we cannot say that the trial court abused its discretion in admitting the notice of claim for this purpose.

¶ 10 Appellants also argue, and the dissent agrees, that Rule 408 of the Arizona Rules of Evidence should have barred the notice of claim's admission. But Rule 408 only operates to exclude statements made in "compromise" of a "disputed" claim,[3] neither of which was the case here.

¶ 11 First, when a notice of claim is filed, there is not yet a "disputed" claim. The filing of the notice of claim merely initiates the claim process against a government entity, just as a complaint in court does against a non-government defendant. *See generally* Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5304 at 196–97 (1980). It simply sets out the nature of claimant's declaration or loss and the resulting payment to which he believes he is entitled. At that stage of the process, for all the complainant knows, the state may agree that it is liable for whatever is demanded and the matter may be resolved without further litigation. It is only when and if the government entity contests all or part of the claim made or of the amounts demanded that a "disputed" claim exists.

■■■■ ¶ 12 Next, because there is no "disputed" claim when the claimant first files the notice of claim, the notice of claim cannot operate as an offer to "compromise" a disputed claim, the second characteristic of excludable evidence under the rule. Rule 408 only excludes evidence of a promise or offer to *compromise* a claim "which was disputed as to either validity or amount." Thus, the types of documents that have been deemed excluded by the rule are those that have "compromised" a party's claim. *See, e.g.,*

*State ex rel. Miller v. Superior Court (Stephens)*, 189 Ariz. 228, 232–33, 941 P.2d 240, 244–45 (App.1997) (stipulated agreement for immediate possession of condemned property, including an appraisal, was compromise evidence under Rule 408 because prepared "for the purposes of negotiating a stipulation between ADOT and the property owners to receive immediate possession without court intervention"); *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106–07 (5th Cir.1981) (report by architect barred because it was to function as "a basis of settlement negotiations"); *Berthot v. Courtyard Properties, Inc.*, 138 Ariz. 566, 567–68, 675 P.2d 1385, 1386–87 (App.1983) (letter in which credits given "solely to get matters settled quickly" barred under Rule 408); *Bates v. Estes Co.*, 125 Ariz. 327, 328, 609 P.2d 597, 598 (App.1980) (letter stating "[i]t is my understanding that if these demands are met that my clients shall not enforce those rights to that purchase contract . . . ." was an offer of settlement barred under Rule 408). *But see People ex rel. Dep't Public Works v. Forster*, 58 Cal.2d 257, 23 Cal.Rptr. 582, 373 P.2d 630, 635–36 (1962) (unconditional assertion of market value of property in letter offering compromise figure admissible in evidence for limited purpose of assertion of market value as statement of independent fact). Here, not only had the state not yet disputed any aspect of the claim, but Hernandez did not offer any compromise less than all the amounts to which he felt he was entitled.

■■■■ ¶ 13 It is true that "[t]he notice of claim statute serves to give public entities notice of a claim and thereby provides an opportunity to resolve the claim before a lawsuit is ever filed." *Andress v. City of Chandler*, 198 Ariz. 112, 114, ¶ 10, 7 P.3d 121, 123 (App.2000); *see* Ariz.Rev.Stat. ("A.R.S.")

---

credibility weighed on other important issues, such as the amount of damages suffered by him.

**3.** Ariz. R. Evid. 408 provides:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration *in compromising or attempting to compromise* a claim which was *disputed* as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements *made in*

*compromise negotiations* is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. (Emphasis added.)

§ 12–821.01(A) (Supp.2000). However, the unilateral assertion of the plaintiff's demands within a notice of claim is not an offer to "compromise." Thus, while the notice of claim may play a role in promoting the settlement process, it is not itself part of the Rule 408 "compromise" process. It merely serves to state the nature of the party's claim, including the amount of damages claimed, and to preserve the claim for later proceedings. It simply does not constitute an offer to compromise the claim as envisioned by Rule 408.

¶ 14 The dissent nevertheless equates the notice of claim to a "demand letter" in which the plaintiff offers to settle for a sum prior to litigation. But a pre-litigation demand letter is different from a notice of claim that must be filed in all cases against a government entity. A pre-litigation demand could include concessions, and thus be the type of document that is ofttimes excluded under the rule. But that application does not justify the expansion of Rule 408 to bar the introduction of a notice of claim, which may enhance settlement possibilities, but would not include any compromise of the claimant's position as part of an offer of settlement.

¶ 15 Appellants and the dissent nevertheless further argue that allowing notices of claim for impeachment purposes would inhibit frank discussions and deter settlement. *See generally* Morris K. Udall *et al., Arizona Law of Evidence* § 88 at 197 (3d ed.1991) (noting that policy favoring settlements "would be substantially undercut if the mere fact of willingness to compromise had evidentiary consequences"). We disagree.

¶ 16 In *Miller,* we acknowledged that Rule 408 excluded more than just the "offer" to compromise, and that conduct or statements made *in the pursuit* of a settlement were

also precluded. 189 Ariz. at 232, 941 P.2d at 244. But, here, a notice of claim is hardly likely to include the type of concession that can be expected as part of a proposal of compromise. Clearly, while the notice of claim may ultimately lead to the settlement of a claim, it is not proffered "in pursuit of a settlement" but as a mandatory filing to establish a claim. Thus, Rule 408 does not bar the admission of Hernandez's notice of claim.

¶ 17 Moreover, A.R.S. section 12–821.01(A) *requires* parties to file claims against public entities and public employees 180 days after the cause of action accrues. A defendant's use of a claim document for impeachment purposes therefore cannot deter other plaintiffs from filing notices of claims because the statutory requirement will remain.[4]

¶ 18 In any event, the admission of the notice of claim did not prejudice Hernandez. He had the opportunity to refute the state's evidence and took full advantage of it.[5] Under questioning by his attorney, Hernandez testified that he did not write, verify, or even see the notice of claim before trial. His attorney reiterated the point during closing argument. In light of this record, we cannot say that the trial court erred by admitting the notice of claim.

### C. Appellants Waived Their Right To Object To The Safety Record Evidence On The Basis Of Lack Of Foundation And Prejudice.

¶ 19 Appellants next argue that the trial court abused its discretion by admitting testimony from Park Manager Dave Pawlik concerning the lack of prior accidents at the retaining wall. At trial, appellants objected to Pawlik's testimony on the basis of relevance.

---

4. The dissent maintains that, even if the filing of the notice of claim is mandatory, our decision is contrary to the public policy behind Rule 408 because it will make claimants "less forthcoming in the details of what happened with a corresponding adverse effect on compromise negotiations." But having claimants describe their claims as accurately as possible is an equally compelling public policy because we should ensure that any claims accepted are based upon reliable information and not falsehoods or overstatements.

5. This opportunity to rebut the notice of claim undercuts the dissent's reliance upon *Clark Equip. Co. v. Ariz. Prop. and Cas. Ins. Guar. Fund,* 189 Ariz. 433, 943 P.2d 793 (App.1997). In *Clark,* we merely concluded that the subject disclosure statement did not constitute a judicial admission. We did not consider whether a disclosure statement could be used for impeachment purposes. *See dissent, infra* ¶ 28.

¶ 20 Appellants' argument rests upon a misunderstanding of the Arizona Supreme Court's holding in *Jones v. Pak–Mor Mfg. Co.*, 145 Ariz. 121, 700 P.2d 819 (1985). In *Jones*, a product liability case, the supreme court overturned its earlier rule excluding all evidence of safety history. *Id.* at 128–29, 700 P.2d at 826–27. The court explained that "[t]here can be no doubt that evidence of safety-history is relevant." *Id.* at 125, 700 P.2d at 823. The court also noted, however, that Rule 403 of the Arizona Rules of Evidence nevertheless could exclude the evidence if its unfairly prejudicial effect substantially outweighed its probative value. *Id.* at 125–26, 700 P.2d at 823–24. Therefore, the proponent "must establish that if there had been prior accidents, the witness probably would have known about them." *Id.* at 127, 700 P.2d at 825. More recently, the supreme court acknowledged that this rule potentially could apply in a premises liability action. *See Isbell v. State*, 198 Ariz. 291, 293, ¶ 9, 9 P.3d 322, 324 (2000).

¶ 21 Here, Pawlik's testimony concerning the site's safety history was properly allowed. First, appellants should have objected on the grounds of lack of foundation and Rule 403, rather than relevance. *See Boy v. I.T.T. Grinnell Corp.*, 150 Ariz. 526, 530, 724 P.2d 612, 616 (App.1986) (stating that the *Jones* court "made it clear that the rule to apply in determining whether to admit evidence of safety history is Rule 403"). Objecting on one ground does not preserve objections on different grounds. *Musgrave v. Githens*, 80 Ariz. 188, 192, 294 P.2d 674, 676–77 (1956). Consequently, we hold that appellants have waived these arguments. *See id.*

¶ 22 Second, appellants mistakenly contend that *Jones* actually supports their relevance objection. But *Jones* explains that testimony is not relevant if its only import is that no one has filed lawsuits or claims. *Jones*, 145 Ariz. at 130, 700 P.2d at 828. Testimony is relevant, however, if it comes from a witness like Pawlik, who served as the park's manager for eight years and lived at Patagonia Lake year-round, and is buttressed by evidence that any fall from the retaining wall would likely result in serious injuries. *See id.* at 127, 700 P.2d at 825. These facts establish that Pawlik's testimony was relevant and support its admission.

### D. The Verdict Form Was Not Misleading Or Prejudicial.

¶ 23 Finally, appellants complain that the trial court provided the jury with verdict forms allowing it to allocate comparative fault and to find for the state, but failed to provide a form allowing the jury to find for appellants. According to appellants, these forms left the impression that the jury could not find for appellants without applying comparative fault principles. The Arizona Supreme Court has ruled that if the trial court supplies verdict forms at all, those forms must reflect every possible verdict. *State v. Garcia*, 102 Ariz. 468, 471, 433 P.2d 18, 21 (1967). Nevertheless, a failure to comply with this rule will not result in a reversal unless prejudice results. *Id.* We evaluate the verdict forms and the trial court's instructions as a whole and determine whether they permitted the jurors to understand the issues without being misled. *McNely v. Ocala Star–Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir.1996).

¶ 24 Applying this standard, we reject appellants' arguments. The trial court specifically instructed the jury as to how it could use the comparative fault form to find in favor of Hernandez:

> You will be given two forms of verdict, they read as follows, and there's no particular significance to the order in which I'm reading these.
>
> We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths, do find in favor of plaintiff Michael Hernandez and find the full damages to be blank dollars.
>
> We find the relative degrees of fault to be—and if a party's not at fault put a zero on the percentage line for that party—Michael Hernandez blank percent. Defendant State of Arizona blank percent. Total blank percent.
>
> As we've told you before, the total has to be 100 percent.

**342**

Taken as a whole, the instructions and jury forms were not misleading. *See Garcia,* 102 Ariz. at 471, 433 P.2d at 21 (finding no prejudicial error in the submission of the jury forms because the jury received correct instructions); *cf. State v. Neal,* 26 Ariz.App. 423, 425, 549 P.2d 203, 205 (1976) (although the trial court violated the criminal rule requiring it to confer with the parties and inform them of the form of verdict it intends to use, no prejudicial error occurred because the jury received correct instructions). In any event, the jury found for the state and thus would have had no occasion to use a plaintiff's verdict form. Accordingly, appellants suffered no prejudice.

### III. CONCLUSION

¶ 25 We affirm the trial court's judgment and denial of the motion for new trial in all respects. In addition, we deny appellants' request for attorneys' fees on appeal.

CONCURRING: PHILIP HALL, Judge.

VOSS, Judge, dissenting.

¶ 26 I respectfully dissent. In my opinion, the trial court abused its discretion in allowing the state to impeach Hernandez with statements made in the notice of claim.

¶ 27 To settle his claim against the state, Hernandez was required to file a notice of claim. A.R.S. § 12–821.01(A) (Supp.2000). Such a notice of claim must contain "a specific amount for which the claim can be settled and the facts supporting that amount." *Id.* Our cases have repeatedly held that filing of a notice of claim serves both notice and settlement purposes. *State v. Brooks,* 23 Ariz.App. 463, 466, 534 P.2d 271, 274 (1975); *Andress v. City of Chandler,* 198 Ariz. 112, 114, ¶ 10, 7 P.3d 121, 123 (App.2000); *Hollingsworth v. City of Phoenix,* 164 Ariz. 462, 464, 793 P.2d 1129, 1131 (App.1990).

¶ 28 Rule 408 of the Arizona Rules of Evidence prohibits the admissibility of statements made in offering to settle a disputed claim, and that includes any admissions made in furtherance of such offers to compromise. *State ex rel. Miller v. Superior Court (Stephens),* 189 Ariz. 228, 234, 941 P.2d 240, 246 (App.1997); *Smith v. Saxon,* 186 Ariz. 70, 74

n. 3, 918 P.2d 1088, 1092 n. 3 (App.1996). Because one of the purposes of filing a notice of claim is settlement, the contents of such notice should be inadmissible under Rule 408. Moreover, the statements made in the notice of claim should not constitute an admission against Hernandez for the same reason that an admission made in a disclosure statement filed under Rule 26.1 of the Arizona Rules of Civil Procedure does not—the purpose of the statements are simply to give the other party *notice* of the claims made, not to cast the contents of those claims in stone. *See Clark Equip. Co. v. Ariz. Prop. and Cas. Ins. Guaranty Fund,* 189 Ariz. 433, 440, 943 P.2d 793, 800 (App.1997).

¶ 29 The majority first claims that Rule 408 is inapplicable because a notice of claim, like a complaint, merely initiates the claim process and does not constitute an attempt to compromise a claim that is "disputed." The majority reasons that in the notice of claim situation, there is no dispute yet because the government may agree that it is liable in response to the notice of claim. The majority's distinction that supposedly removes the notice of claim in this case from the ambit of Rule 408 is mistaken. A demand letter from an attorney making a pre-litigation offer of settlement likewise may be the first notification the receiving party has of a potential claim. And the receiving party may decide to meet the demands of such an offer. Yet, no one can argue that such a letter would be inadmissible in any subsequent litigation under Rule 408. Indeed, one of the cases cited by the majority, *Bates v. Estes Co.,* 125 Ariz. 327, 609 P.2d 597 (App.1980), illustrates this very point. In *Bates,* the pre-litigation demand letter of the purchasers' attorney was found inadmissible in a subsequent suit by the purchasers to enforce a real estate purchase contract. *Id.* at 328, 609 P.2d at 598. The result should be no different here, particularly when the notice of claim is a pre-litigation offer to compromise that is statutorily required to be filed.

¶ 30 The majority also claims that Rule 408 does not apply here because the statements made in the notice of claim were not admitted to dispute the validity or amount of the claim but rather to impeach Hernandez and

that evidence impeaching a witness is "always relevant." This claim is erroneous first because Hernandez's recollection of the facts preceding his fall, as set forth by his lawyer in the notice of claim, is irrelevant. In the Joint Pretrial Statement, the state stipulated to the facts surrounding Hernandez's fall; that is, that while proceeding in an area that had no path or trail, he stepped off a retaining wall and fell. The issue to be tried in the case thus was whether the state was required to place notices at the retaining wall warning of its dangers, not whether Hernandez or his lawyers correctly recalled the facts surrounding his fall. *See State v. Munguia*, 137 Ariz. 69, 71, 668 P.2d 912, 914 (App.1983) (a party is not allowed to impeach a witness on specific events that are not relevant to the issues at trial).

¶ 31 More importantly, statements contained in the notice of claim were not properly admitted in evidence to impeach Hernandez because they were not even *his* statements. As Hernandez testified, he had never before seen the statements made in the notice of claim, did not verify them, review them, or approve them. These statements were not the "prior inconsistent statements" of Hernandez at all and thus, were not relevant to impeach his truth or veracity.

¶ 32 Finally, contrary to the majority's contention, the admission of the statements in the notice of claim clearly prejudiced Hernandez. In cross-examination and closing argument, the state used the discrepancies between the description of the fall in the notice of claim and Hernandez's trial testimony (which was fully consistent with the stipulated facts) to paint Hernandez as confused, irresponsible, and lacking in common sense. The state then proceeded to attack his lawyers as both incompetent and dishonest:

> Now, I'm not really sure that we know exactly what Mr. Hernandez did that night. That's a story that he told in court, but there was a Notice of Claim which began this lawsuit process and in which the plaintiff and his lawyer, the very same lawyers who prepared this Notice of Claim, are attempting to run from. It's Exhibit Number 40. And in that Notice of Claim, signed by his lawyers, the very

same lawyers, the very same law firm who is sitting next to him today and saying believe what we say, now they want to say don't believe what we said.

The great emphasis placed upon this evidence by the state both during the cross-examination of Hernandez and during closing argument compels me to conclude that the jury most likely drew the desired, but improper, inference.

¶ 33 Rule 408 was adopted to promote the public policy favoring the compromise and settlement of disputes and to facilitate free communication with respect to such compromise. Fed.R.Evid. 408 advisory committee notes. The use of the statements made in the notice of claim sanctioned by the majority here frustrates those purposes and has the potential to eviscerate the rule. The state claims that, because the filing of a notice of claim is mandatory, allowing the contents of such notice to be admitted in evidence would not discourage plaintiffs from filing future notices. However, the fact that a document is statutorily required to be filed does not bring its contents outside the purview of Rule 408. *See State ex rel. Miller*, 189 Ariz. at 232–34, 941 P.2d at 244–46. Moreover, the state's argument misses the point. Plaintiffs will still file the required forms but there will be a chilling effect on what they say. The inevitable result of making statements in notices of claim admissible will be exactly what Rule 408 was designed to prevent—those submitting the statements will be less forthcoming in the details of what happened with a corresponding adverse effect on compromise negotiations.

¶ 34 Because the admission of these statements was intended to, and did prejudice Hernandez, I would reverse and remand for new trial.